Gwen GREEN and Dan Green,
Plaintiffs-Respondents,

Mark ZUELEGER and Yvonne Zueleger, Plaintiffs,

CARVER BOAT CORPORATION, Involuntary-Plaintiff,

v.

ADVANCE FINISHING TECHNOLOGY, INC., James M.
Glading, American Equity Specialty Insurance
Company and DEF Insurance Company,
Defendants-Respondents,

WAUSAU GENERAL INSURANCE COMPANY, Subrogated
Defendant-Appellant.

Court of Appeals

*No. 04–0877. Submitted on briefs January 5, 2005.—Decided
March 22, 2005.*

2005 WI App 70

(Also reported in 695 N.W.2d 856.)

On behalf of the subrogated defendant-appellant, the cause was submitted on the briefs of *Peter M. Farb* of *Law Offices of Stilp & Cotton*, Appleton.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Jamie A. Stock* of *Gingras, Cates & Luebke, S.C.*, Madison.

On behalf of the defendants-respondents, Advance Finishing Technology, Inc., and James M. Glading, the cause was submitted on the brief of *W. Ted Tornehl* and *Aaron R. Berndt* of *Borgelt, Powell, Peterson & Frauen, S.C.*, Milwaukee.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J.   Gwen Green was injured at work and received worker's compensation benefits from Wausau General Insurance Company. Gwen and her husband, Dan, sued Advance Finishing Technology, claiming her injury was caused by a chemical manufactured by Advance and used by her employer. The Greens, Advance and Wausau agreed to a total settlement. Then the Greens and Advance agreed to allocate the settlement 75% to Gwen's claim and 25% to Dan's claim for loss of consortium. Wausau, which has a statutory subrogation interest in Gwen's portion of the settlement, objected to the allocation. The circuit court approved the settlement amount and allocation. Wausau appeals, arguing the court failed to value the claims and distribute the funds pro-rata through a methodology articulated in *Brewer v. Auto-Owners Ins. Co.*, 142 Wis. 2d 864, 418 N.W.2d 841 (Ct. App. 1987). We agree, reverse the order and remand with directions to apply the *Brewer* methodology.

## BACKGROUND

¶ 2.   This is a products liability case derived from injuries Gwen Green sustained while employed by Carver Boat Corporation. Green alleged she suffered respiratory injury as a result of her exposure to a chemical Advance manufactured and sold to Carver.

¶ 3.   On February 28, 2002, Gwen and her husband, Dan, commenced this suit. The complaint included claims against Advance Finishing; its agent, James Glading; and their respective insurers (collectively Advance) for Gwen's injuries and for Dan's loss of consortium. The Greens also sought a declaration of Wausau's subrogation interest derived from its worker's compensation benefits payments.

¶ 4. The parties participated in court-ordered mediation on November 7, 2003. As of that date, Wausau had paid benefits of $43,512.20. It estimated future payments of $60,759 for vocational rehabilitation and $12,454 for future medical care. Thus, past and future benefits totaled $116,725.20. At the mediation, all the parties agreed to a settlement of $112,500. The Greens and Advance then agreed to allocate 75% of the settlement to Gwen's claim and 25% to Dan's. This amounted to $84,375 for Gwen and $28,125 for Dan. Wausau did not agree to the allocation.

¶ 5. The Greens filed a motion to approve the settlement. Wausau objected on the grounds that it had not agreed to the allocation, that the settlement allocated too much money to Dan's claim, and that the court was required to follow the *Brewer* methodology to distribute the funds. The circuit court concluded that the settlement was fair and granted the Greens' motion.

## DISCUSSION

¶ 6. WISCONSIN STAT. § 102.29(1) governs the allocation of the proceeds of third-party liability claims deriving from workplace injuries.[1] The statute provides, in relevant part:

> [T]he liability of the tort-feasor shall be determined as to all parties having a right to make a claim, and irrespective of whether or not all parties join in prosecuting such claim, the proceeds of such claim shall be divided as follows: After deducting the reasonable cost of collection, one-third of the remainder shall in any event be paid to the injured employee . . . . Out of the balance remaining, the employer, insurance carrier

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

or, if applicable, uninsured employers fund shall be reimbursed for all payments made by it, or which it may be obligated to make in the future . . . . A settlement of any third party claim shall be void unless said settlement and the distribution of the proceeds thereof is approved by the court before whom the action is pending . . . .

WIS. STAT. § 102.29(1). The statute applies to Gwen's claims against Advance. However, Dan's derivative claim for loss of consortium is not subject to distribution under the statute. *See Brewer*, 142 Wis. 2d at 868.

¶ 7. Wausau contends that because the insurance proceeds of the settlement are insufficient to pay its subrogation claim,[2] the court should have applied the formula set forth in *Brewer* to distribute the funds between the competing claims. In *Brewer*, the plaintiff's husband died as the result of work-related injuries. *Id.* at 866. The worker's compensation insurer, Republic, had paid benefits in excess of $57,000. *Id.* Brewer agreed to a total settlement of $50,200, the applicable insurance policy limits, of which $25,000 was allocated to her loss of society and companionship claim. *Id.* at 866–67.

¶ 8. Republic objected to the distribution of the proceeds, specifically the allocation of $25,000 to the loss of society and companionship claim that was not subject to WIS. STAT. § 102.29(1). *Brewer*, 142 Wis. 2d at 867. The trial court found the distribution to be reasonable and approved the settlement. However, we reversed, concluding:

[W]here claims not subject to sec. 102.29(1) allocation compete for insufficient settlement proceeds with

---

[2] Wausau's past and future expenditures alone exceed the total amount of the settlement.

claims subject to sec. 102.29(1) allocation, the trial court should follow this formula:

1.     Determine the value of each claim;

2.     Pro-rate the settlement proceeds between all claims;

3.     Distribute the amounts allocated to those claims not subject to sec. 102.29(1), Stats.:

   a)   deduct reasonable collection costs;

   b)   distribute the balance to claimants;

4.     Distribute claims subject to sec. 102.29(1), Stats., as follows:

   a)   deduct reasonable collection costs;

   b)   allocate 1/3 to [employee or representative];

   c)   out of balance, the insurance carrier is to be repaid for the payments it has made or is obligated to pay;

   d)   any funds remaining must be paid to the [employee or representative].

*Id.* at 869.

¶ 9.    The Greens and Advance respond *Brewer* is inapplicable. They contend *Brewer's* reference to "insufficient insurance proceeds," *id.* at 868, means inadequate insurance coverage. Thus, they reason *Brewer* governs only when the insurance policy limits are insufficient to satisfy all the claims. Here, the policy limits were $1,000,000, more than adequate to compensate all interested parties. Therefore, they conclude the circuit court was not required to apply the *Brewer* formula.

749

¶ 10. *Brewer* should not be read so narrowly. Insufficient insurance proceeds cause competition for funds between two categories of claims: those claims that are subject to a worker's compensation insurer's statutory subrogation rights under WIS. STAT. § 102.29(1) and those that are not. *Id.* at 868. This competition for limited funds is resolved by valuing all the claims and sharing the funds pro-rata between the two types of claims. *Id. Brewer*'s pro rata sharing methodology prevents the parties from allocating disproportionate funds to non-§ 102.29(1) claims. Disproportionate sharing circumvents the statutory subrogation rights created by the legislature as part of the worker's compensation scheme. *See Mulder v. Acme-Cleveland Corp.*, 95 Wis. 2d 173, 180, 290 N.W.2d 276 (1980) ("[W]orker's compensation laws constitute an all-pervasive legislative scheme which attempts to effect a compromise between the employer and the employee's competing interests.").

¶ 11. In *Brewer*, the policy limits resulted in "insufficient insurance proceeds" to pay both categories of claims. However, we do not read *Brewer* as being limited to cases where the policy limits are insufficient to pay all claims. Here, the settlement is less than Wausau's subrogation interest alone, and therefore is insufficient to satisfy all claims. Thus, there are "insufficient insurance proceeds" to satisfy both categories of claims, causing competition for the limited funds and triggering the application of the *Brewer* pro rata distribution formula. We conclude *Brewer* applies whenever the insurance proceeds are insufficient to satisfy all claims, regardless of the reason for that insufficiency.

¶ 12.   The Greens and Advance argue that, even if *Brewer* applies, the circuit court properly exercised its discretion when it approved the settlement.[3] We will affirm a circuit court's approval of a settlement if it examines the relevant facts, applies a proper legal standard and uses a demonstrated rational process to reach a reasonable conclusion. *Zentgraf v. The Hanover Ins. Co.*, 2002 WI App 13, ¶ 10, 250 Wis. 2d 281, 640 N.W.2d 171. Here, the court's comments relative to *Brewer* were as follows:

> [T]he total value of the claim in relationship to the respective parties has been effectively determined at mediation and that the parties have reached a stipulated settlement which takes into account the very circumstances under the case . . . .
>
>      . . . .
>
> But the Brewer case sets forth certain particulars, and if it's applicable, it seems to me that those particulars have been addressed. I don't have anything in front of me that would lead me to believe that there is anything unreasonable about the negotiated settlement.

From this record, we cannot conclude that the court properly applied *Brewer* to the facts of this case. Green and Advance did not provide the circuit court with any

---

[3] The Greens and Advance also appear to argue that Wausau cannot contest the distribution of the settlement funds because its attorney did not personally participate in the mediation, electing to appear by telephone. However, Wausau properly preserved its objection at the hearing on the motion to approve the settlement. *Cf. Herlache v. Blackhawk Collision Repair, Inc.*, 215 Wis. 2d 99, 572 N.W.2d 121 (Ct. App. 1997) (insurer lost ability to object to the allocation of funds between claims by failing to attend settlement approval hearing).

■

evidence, aside from the values agreed to at mediation, from which the court could value the respective claims.

¶ 13.    The circuit court focused on the reasonableness of the settlement amounts, including the amount allocated to Dan's claim. The amount allocated to settle Dan's claim, in isolation, may be reasonable; however, that amount may not be reasonable when compared to the amount allocated to Gwen's claim. The *Brewer* formula precisely addresses this situation—because there are inadequate funds available to pay all claims, each claim should share pro-rata in the funds. Allocating a disproportionate amount of the total settlement to claims that are exempt from WIS. STAT. § 102.29(1) circumvents legislative intent. The *Brewer* formula prevents the parties from using settlement as an end-run around the purposes of the worker's compensation scheme. Accordingly, we reverse and remand with directions to apply the *Brewer* formula to distribute the settlement proceeds.

*By the Court.*—Order reversed and cause remanded with directions.