James N. ZENTGRAF and Diane M. Zentgraf,
Plaintiffs-Respondents,

AMERICAN MOTORISTS INSURANCE COMPANY,
Involuntary-Plaintiff-Appellant,

v.

THE HANOVER INSURANCE COMPANY, a foreign corpo-
ration, and Daniel E. Duame, Defendants.

Court of Appeals

*No. 01–0323. Submitted on briefs November 7, 2001.—Decided
December 27, 2001.*

2002 WI App 13

(Also reported in 640 N.W.2d 171.)

283

On behalf of the involuntary-plaintiff-appellant, the cause was submitted on the briefs of *Cori Lynn Prahl*, of *Hills & Hicks, S.C.*, of Brookfield.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *James P. Maloney, Esq.*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1. SCHUDSON, J. American Motorists Insurance Company (American) appeals from the circuit court "order approving distribution of settlement proceeds under [Wis. Stat.] § 102.29" (1999–2000).[1] Ameri-

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted. Wisconsin Stat. § 102.29(1) provides, in relevant part:

> The making of a claim for compensation against . . . [a] compensation insurer for the injury . . . of an employee shall not affect the right of the employee, the employee's personal representative, or other person entitled to bring action, to make claim or maintain an action in tort against any other party for such injury . . ., hereinafter referred to as a 3rd party; nor shall the making of a claim by any such person against a 3rd party for damages by reason of an injury to which ss. 102.03 to 102.64 [of the Worker's Compensation Act] are applicable, or the adjustment of any such claim, affect the right of the injured employee or the employee's dependents to recover compensation. The . . . compensation insurer who shall have paid or is obligated to pay a lawful claim under this chapter shall have the same right to make claim or maintain an action in tort against any other party for such injury. . . . Each shall have an equal voice in the prosecution of said claim, and any disputes arising shall be passed upon by the court before whom the case is pending. . . . If notice is given as provided in this subsection, the liability of the tort-feasor shall be determined as to all parties having a right to make claim, and irrespec-

can argues that the circuit court erred by: (1) awarding Diane Zentgraf damages for the loss of society and companionship of her husband, James Zentgraf, when no evidence was presented to support the award; and (2) failing to provide for its attorney's fees as costs of collection under § 102.29. American is correct and, therefore, we reverse and remand with directions.

## I. BACKGROUND

¶ 2. James Zentgraf was employed by Access Industries, Inc., to service elevators at various client locations. On September 29, 1995, while traveling to a client location, his vehicle was rear-ended by a vehicle driven by Daniel Duame, during a five-vehicle accident. Mr. Zentgraf sustained injuries for which he received medical treatment.

¶ 3. On September 8, 1998, Mr. Zentgraf and his wife, Diane, filed a complaint against Duame and The Hanover Insurance Company, Duame's automobile li-

tive of whether or not all parties join in prosecuting such claim, the proceeds of such claim shall be divided as follows: After deducting the reasonable cost of collection, one-third of the remainder shall in any event be paid to the injured employee or the employee's personal representative or other person entitled to bring action. Out of the balance remaining, the . . . insurance carrier . . . shall be reimbursed for all payments made by it, or which it may be obligated to make in the future, under this chapter. . . . Any balance remaining shall be paid to the employee or the employee's personal representative or other person entitled to bring action. If both the employee or the employee's personal representative or other person entitled to bring action, and the . . . compensation insurer . . . join in the pressing of said claim and are represented by counsel, the attorneys' fees allowed as a part of the costs of collection shall be, unless otherwise agreed upon, divided between such attorneys as directed by the court. . . . A settlement of any 3rd party claim shall be void unless said settlement and the distribution of the proceeds thereof is approved by the court before whom the action is pending. . . .

ability insurer. The complaint joined American, the worker's compensation insurance carrier for Access Industries, as a plaintiff, pursuant to WIS. STAT. § 102.29. The complaint alleged that Duame's "negligence and carelessness" caused the collision and Mr. Zentgraf's "injuries and damages," as well as Mrs. Zentgraf's loss of "the aid, society, companionship, services and consortium" of her husband.

¶ 4. Upon receiving the summons and complaint, a representative of American's claim department wrote to the circuit court, advising that American's lien had been paid in full and, therefore, American would not be participating in the lawsuit. The letter requested that American be dismissed from the action. The court, however, did not grant the request for dismissal, and American subsequently retained legal representation for the action. On December 24, 1998, American's attorney filed a "notice of lien and intent to participate in prosecution under [WIS. STAT. §] 102.29."[2]

¶ 5. In a letter dated May 12, 2000, counsel for the Zentgrafs notified the circuit court that the case had been settled. The following November, however, because the parties had been unable to reach an agreement regarding distribution of the settlement proceeds, the Zentgrafs moved for approval of the $15,000 settlement and distribution of the proceeds as outlined in their proposed order: $3750 to Diane Zentgraf; and $11,250 to James Zentgraf, to be distributed pursuant to the provisions of WIS. STAT. § 102.29. At the November 13, 2000 hearing on the motion, American objected to the proposed order. The court adjourned the hearing to allow for testimony.

---

[2] American subsequently amended the notice four times, filing the last amendment on September 21, 2000.

¶ 6. At the January 8, 2001 hearing, the parties reported that they still had not reached an agreement regarding distribution of the settlement proceeds. American, arguing that the claim for loss of society and companionship was worth only $500, acknowledged that it was attempting to increase the portion of the settlement that would be subject to distribution under the WIS. STAT. § 102.29 formula. *See DeMeulenaere v. Transp. Ins. Co.*, 116 Wis. 2d 322, 325, 342 N.W.2d 56 (Ct. App. 1983) ("[A]n award for loss of consortium is not to be considered in the distribution formula of [WIS. STAT. §] 102.29(1). . . ."). The court took no testimony but, after hearing further argument from attorneys for American and the Zentgrafs, announced that it would review "the file and the documents" and issue a decision within thirty days. On January 11, 2001, the court signed the Zentgrafs' proposed order, without modification.

## II. DISCUSSION

### A. Mrs. Zentgraf's Claim

¶ 7. American first contends that the circuit court erred by awarding Mrs. Zentgraf damages for the loss of society and companionship of her husband. It argues that the award "must be set aside as it lacks any credible, supporting evidence or analysis of the court's rationale behind the award." The Zentgrafs respond that, in support of Diane's claim, they presented portions of James' deposition—the "adverse examination referring to the nature of the derivative claim" which, they argue, "explained the impact of his injury on his activities as related to [Diane] and care of the children and her increased responsibilities for the same." American replies that because "Mrs. Zentgraf's claim for loss

287

of consortium is an independent claim based on her life experiences," the circuit court erred when it granted the award "without any sworn testimony, affidavits or any support from Mrs. Zentgraf to establish *her* claim." Although American's contention that any such evidence would have had to have come from Mrs. Zentgraf herself is incorrect, its primary argument is sound.

¶ 8. American fails to offer any authority establishing that Mr. Zentgraf's deposition was categorically insufficient to establish Mrs. Zentgraf's loss of society and companionship. As our supreme court has explained:

> Since 1967, we have recognized the common-law right of wives as well as husbands to bring an action for loss of consortium when the other spouse is injured by the acts of a third party. Consortium involves " . . . a broad range of elements such as love, companionship, affection, society, sexual relations, and the right of support or the performance of marital services, *any one of which is sufficient to constitute a cause of action*." Loss of consortium may involve a spouse's loss of society and companionship during a disability. It may also involve increased care for the injured spouse, increased responsibility for the children and a change in social position.

*Kottka v. PPG Indus., Inc.*, 130 Wis. 2d 499, 519, 388 N.W.2d 160 (1986) (citations omitted). The court continued:

> [T]he elements of loss of society, affection and sexual companionship in a spouse's action for loss of consortium are personal to the claiming spouse and apart from the claim of the injured spouse. The claim for a loss of consortium is derivative, in the sense that it does not arise unless the other spouse has sustained a personal injury. However, the claim is not for the other

spouse's personal injury but for the separate and independent loss which the noninjured spouse sustains.

*Id.* at 521 (citations omitted). Thus, while, as American has argued, "Mrs. Zentgraf's claim for loss of consortium is an independent claim based on her life experiences," nothing precludes her from proving her claim through Mr. Zentgraf's testimony.

¶ 9. Still, while the legal premise of American's reply is flawed, the factual premise of its primary argument is fully supported by the record.

¶ 10. In reviewing the sufficiency of the evidence in support of Mrs. Zentgraf's claim, we will uphold the circuit court's determination if the circuit court "examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." *See Martindale v. Ripp*, 2001 WI 113, ¶ 28, 246 Wis. 2d 67, 629 N.W.2d 698. Here, however, because the circuit court failed to state any basis for its decision, we must "independently review[] the record to determine whether the circuit court properly exercised its discretion." *Id.* at ¶ 29.

¶ 11. The Zentgrafs rely entirely on portions of Mr. Zentgraf's deposition.[3] The brief portions to which they refer, however, aside from confirming that the Zentgrafs had a long-term marriage and two minor

---

[3] At the hearing, counsel for the Zentgrafs first indicated that Mr. Zentgraf "would be testifying to the nature and extent of injuries he sustained in his motor vehicle accident as well as his relationship with his wife." Shortly thereafter, however, counsel advised the court that he was "not going to have [his] client testify." Counsel suggested, instead, that the court "make a determination as to the appropriate distribution" based on the arguments and written submissions, including portions of Mr.

children, merely establish that although his treating physician had not restricted his activities, Mr. Zentgraf did not really want to do much other than sit back and "kind of" relax. He admitted that he still did yard work, including operating his snowblower. He testified:

> Q: Is there anything that you feel you absolutely cannot do since this accident?
>
> A: Probably just be comfortable.
>
> Q: What do you and your wife like to do together for relaxation?
>
> A: Right now ain't too much but watching TV. Probably why she calls me a couch potato now.
>
> Q: What did you do before the accident for recreation with your wife?
>
> A: Go out and do stuff, more shopping, stuff like that together.
>
> Q: Do you ever go to movies?
>
> A: No. We['d] probably rent them if we did.
>
> Q: How about going out to dinner?
>
> A: Yes, we used to do that.

Zentgraf's deposition. Counsel for American objected to "the plaintiffs' submissions in the record," contending that they were "not in proper form."

Although it never explicitly ruled on American's counsel's objection, the court took no testimony and, instead, indicated its intention to make its decision based on the submissions and arguments. On appeal, American does not challenge that evidentiary ruling but, rather, addresses what it deems the insufficiency of the only evidence—the submitted portions of Mr. Zentgraf's deposition.

Q: Do you still go out to dinner?

A: Not that much.

Q: Why is that?

A: I'm working second shift now, and I['d] just rather stay at home I guess.

¶ 12. Clearly, this testimony is insufficient to support Mrs. Zentgraf's claim for deprivation of "the aid, society, companionship, services and consortium" of her husband. Even if Mr. and Mrs. Zentgraf had been doing more shopping and dining out together before the accident, Mr. Zentgraf attributed any change to his second-shift employment and his preference to stay home.

¶ 13. Thus, Mr. Zentgraf's testimony does not describe Mrs. Zentgraf's loss of anything even on "a broad range of elements such as love, companionship, affection, society, sexual relations, and the right of support or the performance of marital services." *See Kottka*, 130 Wis. 2d at 519 (citation omitted). Nor does our independent review of the record reveal that any other evidence was submitted to establish her claim. Thus, based upon the record before us, we conclude that the circuit court erroneously exercised discretion when it awarded damages to Mrs. Zentgraf as outlined in the Zentgrafs' proposed order. *See id.* at 522 (holding that portion of settlement representing recovery on injured worker's wife's claim for loss of consortium, as well as costs of collection of the claim, must be excluded from allocation of proceeds under Wis. Stat. § 102.29(1)).

291

### B. Attorney's Fees as Costs of Collection

¶ 14. American next contends that the circuit court erred by failing to provide for its attorney's fees as costs of collection under Wis. Stat. § 102.29. American argues that *Diedrick v. Gehring*, 62 Wis. 2d 759, 216 N.W.2d 193 (1974), "creates an unmistakable directive that the court must allocate a portion of the settlement to compensate [American's] attorneys for their services."[4] American further relies on *Kohlberg v. Sullivan Foods, Inc.*, 644 N.E.2d 809 (Ill. App. Ct. 1994), a case in which the court stated that *Diedrick* "clearly indicates that the court must allocate some portion of the fee to the compensation carrier's attorney *when that attorney participates on behalf of the carrier, regardless of whether that attorney's participation aided the employee,*" *id.* at 812 (emphasis added), and held that the law firm for the worker's compensation carrier was entitled to fees for the services it provided "regardless of whether it contributed anything to plaintiffs' settlement," *id.* [5]

¶ 15. Pointing to American's documentation in support of its request for attorney's fees of $5,651.25, the Zentgrafs respond that none of American's counsel's

---

[4] American relies on a passage stating that Wis. Stat. § 102.29(1) "specifically requires the court approving the settlement to determine the attorneys' fees to be allowed where both the injured party and the compensation carrier joined in bringing the claim to court, and then requires the trial court to divide the fees allowed 'between such attorneys.' " *Diedrick v. Gehring*, 62 Wis. 2d 759, 763–64, 216 N.W.2d 193 (1974).

[5] In *Kohlberg v. Sullivan Foods, Inc.*, 644 N.E.2d 809, 811 (Ill. App. Ct. 1994), the court reasoned: "The substantive rights of the insurer are implicated here as it would have to pay the attorney fee if [the law firm representing the insurer] is not paid from the proceeds of the settlement."

activities constituted "legal efforts or activities to prepare the case for trial or to reach a settlement." The Zentgrafs contend that "[n]o such attorney fees are available for the mere documentation of the amount of a claimed lien under [Wis. Stat.] § 102.29 and *Diedrick*, . . . absent active participation in the **pressing** of the principal third party claim." They further argue that American is not entitled to attorney's fees because it did not "contribute services toward the successful result" and has not " 'joined in the pressing of the action' within the meaning of § 102.29."

¶ 16. Thus, the Zentgrafs assert that "[r]egardless of all else, there is no question but that all activities after settlement of the claim are not recoverable out of the settlement amount generated by others and it is improper for American . . . to seek reimbursement of such charges, fees and expenses." They do not, however, provide any authority to support their assertion. *See* Wis. Stat. Rule 809.19(1)(e), (3)(a) (appellate brief must contain argument on each issue, citing authorities upon which each contention relies). Indeed, the record all but refutes their position.

¶ 17. The Wisconsin Worker's Compensation Act does not define "pressing" of a claim, *see* Wis. Stat. ch. 102, and although Wisconsin case law utilizes the term, no published case explains what constitutes the "pressing" of a claim. Certain sources, however, provide definitional guidance, wholly consistent with common sense and common usage.

¶ 18. Webster's Third New International Dictionary (1993) contains multiple definitions of "press," one of which is "to follow through (a course of action)." *Id.* at 1795. Other definitions of "press" include "[t]o seek to influence, as by insistent arguments; entreat insistently" and "[t]o attempt to force to action; urge on."

THE AMERICAN HERITAGE DICTIONARY 980 (2d college ed. 1985). Here, clearly, under any of these definitions, American took numerous actions to "join in the pressing" of the claim against Duame and his liability insurer and to pursue its interests regarding the distribution of the settlement.

¶ 19. In addition to repeatedly notifying the circuit court of the amount of its lien claim and its intent to participate in the prosecution of the claim against Duame and his insurer, counsel for American: (1) was in frequent contact with attorneys for the other parties; (2) responded to requests from both defense counsel and plaintiffs' counsel to produce documents; (3) requested, received, and reviewed medical records from multiple medical institutions; (4) spent time preparing for the final pretrial conference; (5) frequently reviewed the case file to determine the status of discovery and investigation; (6) prepared for and attended a mediation conference; (7) analyzed WIS. STAT. § 102.29 implications for settlement and repeatedly communicated with the Zentgrafs' attorney regarding distribution of the settlement proceeds; (8) prepared a motion to postpone the hearing on the Zentgrafs' motion to approve the settlement and distribution of its proceeds as outlined in their proposed order; (9) prepared a letter brief and affidavit with supporting documentation; and (10) prepared for and attended the motion hearing. Although the Zentgrafs emphasize that the action was settled in April 2000, substantial issues regarding distribution of the settlement funds remained until the circuit court signed the Zentgrafs' proposed order on January 11, 2001.

¶ 20. Therefore, we conclude that the circuit court violated WIS. STAT. § 102.29(1) when it denied

American's request for attorney's fees in its entirety, with no explanation. *See Brewer v. Auto-Owners Ins. Co.*, 142 Wis. 2d 864, 869, 418 N.W.2d 841 (Ct. App. 1987) (outlining formula to be used by circuit court when "claims not subject to [WIS. STAT. §] 102.29(1) allocation compete for insufficient settlement proceeds with claims subject to [WIS. STAT. §] 102.29(1) allocation"); *see also Martindale*, 2001 WI 113 at ¶¶ 28–29. Accordingly, we reverse and remand for: (1) determination of whether the full $15,000 is a "fair and reasonable amount" for settlement of Mr. Zentgraf's claim, *see DeMeulenaere*, 116 Wis. 2d at 330, and thus subject to distribution under the formula of WIS. STAT. § 102.29; and (2) further proceedings to determine the attorney's fees due counsel for American and Mr. Zentgraf.

*By the Court.*—Order reversed and cause remanded with directions.[6]

───────────────

[6] *See DeMeulenaere v. Transp. Ins. Co.*, 116 Wis. 2d 322, 325, 342 N.W.2d 56 (Ct. App. 1983) ("[B]ecause the trial court has failed to explicate its reasons for approving the settlement, we vacate the order and remand the cause with directions.").