Anthony R. ANDERSON and Naomi Anderson,
Plaintiffs-Appellants-Petitioners,

v.

MSI PREFERRED INSURANCE COMPANY,
Defendant,

ACCIDENT FUND COMPANY,
Defendant-Respondent.

Supreme Court

*No. 2003AP1880. Oral argument December 13, 2004.
—Decided June 2, 2005.*

2005 WI 62

(Also reported in 697 N.W.2d 73.)

66

68

For the plaintiffs-appellants-petitioners there were briefs by *C.M. Bye, Tracy N. Tool*, and *Bye, Goff & Rohde, Ltd.*, River Falls, and oral argument by *Tracy N. Tool.*

For the defendant-respondent there was a brief by *Christopher D. Walther* and *Walther Law Offices, S.C.*, Milwaukee, and oral argument by *Christopher D. Walther.*

¶ 1. LOUIS B. BUTLER, JR., J. Anthony and Naomi Anderson ("Anderson") seek review of an unpublished court of appeals decision that concluded the circuit court properly exercised its discretion by awarding Accident Fund Insurance Company nearly $7,500 in attorney fees and costs as part of the reasonable costs of collection in a third-party settlement distribution under Wis. Stat. § 102.29(1) (2001–02).[1]Anderson v. MSI

---

[1] Wisconsin Stat. § 102.29(1) reads in full:

102.29 Third party liability. (1) The making of a claim for compensation against an employer or compensation insurer for the injury

or death of an employee shall not affect the right of the employee, the employee's personal representative, or other person entitled to bring action, to make claim or maintain an action in tort against any other party for such injury or death, hereinafter referred to as a 3rd party; nor shall the making of a claim by any such person against a 3rd party for damages by reason of an injury to which ss. 102.03 to 102.64 are applicable, or the adjustment of any such claim, affect the right of the injured employee or the employee's dependents to recover compensation. The employer or compensation insurer who shall have paid or is obligated to pay a lawful claim under this chapter shall have the same right to make claim or maintain an action in tort against any other party for such injury or death. If the department pays or is obligated to pay a claim under s. 102.81 (1), the department shall also have the right to maintain an action in tort against any other party for the employee's injury or death. However, each shall give to the other reasonable notice and opportunity to join in the making of such claim or the instituting of an action and to be represented by counsel. If a party entitled to notice cannot be found, the department shall become the agent of such party for the giving of a notice as required in this subsection and the notice, when given to the department, shall include an affidavit setting forth the facts, including the steps taken to locate such party. Each shall have an equal voice in the prosecution of said claim, and any disputes arising shall be passed upon by the court before whom the case is pending, and if no action is pending, then by a court of record or by the department. If notice is given as provided in this subsection, the liability of the tort-feasor shall be determined as to all parties having a right to make claim, and irrespective of whether or not all parties join in prosecuting such claim, the proceeds of such claim shall be divided as follows: After deducting the reasonable cost of collection, one-third of the remainder shall in any event be paid to the injured employee or the employee's personal representative or other person entitled to bring action. Out of the balance remaining, the employer, insurance carrier or, if applicable, uninsured employers fund shall be reimbursed for all payments made by it, or which it may be obligated to make in the future, under this chapter, except that it shall not be reimbursed for any payments of increased compensation made or to be made under s. 102.18 (1) (bp), 102.22, 102.35 (3), 102.57 or 102.60. Any balance remaining shall be paid to the employee or the employee's personal representative or other person entitled to bring action. If both the employee or the employee's personal representative or other person entitled

op. (Wis. Ct. App. Feb. 10, 2004).[2] Anderson argues this court should reverse the court of appeals' decision on either of two grounds: (1) conclude that for a worker's compensation carrier's attorney to join in the pressing of the claim against the third-party tortfeasor requires the attorney to demonstrate that his or her activities substantially contributed to obtaining recovery from the third party; or (2) agree that Accident Fund's failure to produce any evidence of hours worked and rate charged requires overturning the circuit court's exercise of discretion.[3]

¶ 2. We decline Anderson's invitation to alter the existing law for what is required to join in the pressing of a claim against a third party. In short, because the worker's compensation carrier has the same right to

to bring action, and the employer, compensation insurer or depart ment, join in the pressing of said claim and are represented by counsel, the attorneys' fees allowed as a part of the costs of collection shall be, unless otherwise agreed upon, divided between such attorneys as directed by the court or by the department. A settlement of any 3rd party claim shall be void unless said settlement and the distribution of the proceeds thereof is approved by the court before whom the action is pending and if no action is pending, then by a court of record or by the department.

All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

[2] The court of appeals also concluded that Anderson's appeal was not frivolous. That issue is not before us.

[3] Anderson also advances a third argument, that it is unreasonable for Accident Fund to spend over $7,400 to collect an $8,700 worker's compensation lien based on a claim against a tortfeasor with a $25,000 policy. We do not reach this issue because we conclude that the circuit court erroneously exercised its discretion by concluding that it was required to approve Accident Fund's represented attorney fees without assessing their reasonableness or the reasonableness of the total costs of collection.

bring, and an equal voice in prosecuting, a third-party claim, and because the worker's compensation carrier's attorney does not represent the employee, the attorney is entitled to recover reasonable attorney fees and costs associated with representing the worker's compensation carrier as part of the reasonable costs of collection under Wis. Stat. § 102.29(1).

¶ 3. However, we conclude that the circuit court erroneously exercised its discretion by failing to determine whether $17,700 in total fees and costs on a $25,000 settlement constitutes the reasonable costs of collection in this case. Therefore, we reverse the court of appeals' decision and remand this matter to the circuit court for a hearing to determine what the reasonable costs of collection are and how those costs are to be apportioned between the attorneys.

I

¶ 4. On October 15, 2001, Anderson was injured in a motor vehicle accident caused by Shawn Jones. It is undisputed that Anderson was in the course of his employment at the time of the accident and that his injuries arose out of his employment. Jones was insured by Acceptance Insurance Co. and had a policy limit of $25,000. Accident Fund paid worker's compensation benefits and medical expenses totaling $8,711.98.

¶ 5. In March 2002, Accident Fund referred the case to Walther Law Offices, SC, to seek reimbursement for the payments it made to Anderson.[4] See Wis. Stat.

[4] Hereafter, and unless otherwise indicated, "Accident Fund" includes Accident Fund's attorney.

74

§ 102.29(1).[5] On July 11, 2002, Accident Fund directed Walther to take an active role in managing the claim to protect its reimbursement interest.

¶ 6. On July 23, 2002, Anderson commenced a third-party tort action against Jones, Acceptance Insurance Co., and MSI Preferred Insurance Co. (Jones' underinsured motorist carrier), pursuant to Wis. Stat. § 102.29(1). However, Anderson did not name Accident Fund as a party, even though § 102.29(1) gives both the employee and the worker's compensation carrier the same right to make the third-party claim and requires each to "give to the other reasonable notice and opportunity to join in the making of such claim . . . ."

¶ 7. In August 2002, Accident Fund began searching for Jones' insurer. After learning Jones' insurer was Acceptance Insurance, Accident Fund also learned that Anderson commenced a Wis. Stat. § 102.29(1) claim. Concerned with whether Anderson would protect its interests, Accident Fund prepared a motion to intervene, but Anderson voluntarily joined Accident Fund as a party on October 9, 2002.

¶ 8. The claim against Jones was mediated on March 3, 2003, and Acceptance Insurance Co. offered its policy limits of $25,000. The parties did not resolve the distribution of the proceeds under Wis. Stat. § 102.29(1).

¶ 9. Just over one month later, on April 17, Anderson filed a motion to approve the settlement and distribution of the proceeds. The motion listed Accident

---

[5] *See also Campion v. Montgomery Elevator Co.*, 172 Wis. 2d 405, 410–13, 493 N.W.2d 244 (Ct. App. 1992) (concluding Wis. Stat. § 102.29(1) provides worker's compensation carrier with a direct cause of action against third-party tortfeasor for payments the carrier made).

Funds' costs of collection as $3,547.13, a figure Anderson received from Accident Fund a month earlier during the mediation. Accident Fund opposed the distribution, asking that the court award it $7,472.97 in costs of collection. The parties filed briefs in support of their positions. On May 20, the Barron County Circuit Court, Honorable James C. Babler, approved the $25,000 settlement but set a hearing for a determination on the distribution of the proceeds. The court required the parties to submit affidavits and any other necessary documents to support their fees and costs.

¶ 10. Anderson submitted an affidavit that stated Accident Fund indicated its costs of collection were only $3,547.13 at the mediation. Anderson also attached a copy of the attorney's contingency fee agreement, which provided for a one-third recovery plus out-of-pocket expenses.[6] The affidavit expressed Anderson's belief that its contingency fee was reasonable and then generally listed the activities taken in pursuing this claim.[7]

¶ 11. Accident Fund also submitted an affidavit. It contested Anderson's assertion regarding its costs of collection, claiming that it never suggested its costs were actually $3,547.13. Accident Fund stated that that amount was a settlement offer to resolve its costs of collection, an offer Anderson rejected. Accident Fund further stated that the mediation and settlement oc-

---

[6] The fee agreement also contained escalating percentages of recovery depending on whether appeals were taken. Anderson's attorney has represented to both the court of appeals and to this court that he will not charge his client any additional fees for pursuing appeals. Accordingly, we limit our discussion to the one-third recovery.

[7] The affidavit also contained assertions and exhibits relating to disputed medical expenses, an issue that apparently has since been resolved.

curred as a result of its persistence on having, and its argument during, mediation. As was the case with Anderson's affidavit, Accident Fund's submissions cursorily describe the legal work done and did not contain the numbers of hours worked or the fee charged. Accident Fund did not include an itemized billing of costs.

¶ 12. At the hearing on June 26, Anderson claimed it was unreasonable for Accident Fund to claim an additional $3,000 in fees that were apparently incurred from the mediation to the filing of the affidavits. Anderson took issue with Accident Funds' failure to supply the court with any proof regarding the number of hours billed, an itemization of what work was done, when it was done, and the hourly rate at which it was done. Finally, Anderson argued that it was unreasonable for Accident Fund to claim over $7,000 as costs of collection to secure an $8,711.98 reimbursement interest.

¶ 13. Accident Fund reiterated that it simply offered to settle the fees and costs at the mediation for $3,547.13, a figure that represented the fees and costs incurred prior to attending the mediation session. Although Accident Fund knew that there could be additional costs associated with attending the mediation, it stated it was willing to compromise and not claim those additional amounts. From the close of the mediation to the date of the hearing, Accident Fund averred it now had incurred $7,472.97 in total fees and costs.

¶ 14. Accident Fund further explained that some of its fees were incurred because Anderson did not provide it with notice of the suit as required by Wis. Stat. § 102.29(1). Accident Fund indicated it was suspicious of Anderson following this failure and did not

trust him to protect its interest. What those fees and costs were, however, was not developed.

¶ 15. The circuit court found that Anderson's failure to join Accident Fund from the beginning was not intentional or based on bad faith, but did result in Accident Fund becoming distrustful of Anderson and how the case was to be handled. The court then concluded it was required to approve Accident Fund's fees of $7,472.97. The court expressed regret at having to do so, but stated the high costs were associated with Anderson's handling of the case from the beginning.

¶ 16. Anderson appealed, arguing that the court erred by concluding it was required to award Accident Fund's fees and costs, as opposed to awarding the reasonable costs of collection, and that there was an insufficient factual basis to sustain that award. The court of appeals affirmed. The court noted that the circuit court requested affidavits detailing the basis for each party's costs and read the affidavits at least three times. *Anderson*, No. 2003AP1880, unpublished slip op., ¶ 12.

¶ 17. Because the circuit court indicated it read the affidavits multiple times, the court of appeals concluded that the circuit court implicitly based its decision on them. *Id.*, ¶ 18. The court of appeals then turned to the relevant factors in SCR 20:1.5(a) and evaluated them in light of the record. *Id.*, ¶¶ 19–24. The court concluded the record revealed a rational basis for the circuit court's conclusion that Accident Fund's fees were reasonable. *Id.*, ¶ 24. Therefore, the court concluded the award was not the product of an erroneous exercise of discretion. *Id.* We accepted Anderson's petition for review, and we reverse.

## II

¶ 18. This case requires us to interpret Wis. Stat. § 102.29(1). Statutory interpretation presents a question of law we review de novo. *German v. DOT,* 2000 WI 62, ¶ 7, 235 Wis. 2d 576, 612 N.W.2d 50. Our goal is to discern the intent of the legislature. *Id.* The purpose of statutory interpretation is to determine what a statute means so that it may be given its full, proper, and intended effect. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. We begin with the statute's language because we assume that the legislature's intent is expressed within the words it used. *Id.,* ¶ 45. Generally, language is given its common, ordinary, and accepted meaning. *Id.* If the statute's meaning is plain, we ordinarily stop the inquiry. *Id.*

¶ 19. Our review of the circuit court's value of reasonable attorney fees and costs is limited to whether the circuit court properly exercised its discretion. *See Meyer v. Michigan Mut. Ins. Co.,* 2000 WI App 53, ¶ 11, 233 Wis. 2d 493, 609 N.W.2d 167. A proper exercise of discretion requires the circuit court to employ "a logical rationale based on the appropriate legal principles and facts of record." *Id.* (citation and quotation omitted). As this court recently recognized, "We give deference to the circuit court's decision because the circuit court is familiar with local billing norms and will likely have witnessed first-hand the quality of the service rendered by counsel." *Kolupar v. Wilde Pontiac Cadillac, Inc.,* 2004 WI 112, ¶ 22, 275 Wis. 2d 1, 683 N.W.2d 58. We will uphold the circuit court's determination unless it erroneously exercised its discretion. *Id.* "If the circuit

court proceeds on an erroneous interpretation of the law, the exercise of discretion is erroneous." *Theis v. Midwest Sec. Ins. Co.*, 2000 WI 15, ¶ 8, 232 Wis. 2d 749, 606 N.W.2d 162.

## III

¶ 20. Wisconsin Stat. § 102.29(1) "was enacted to direct the courts in the distribution of proceeds of third-party tort actions." *Nelson v. Rothering*, 174 Wis. 2d 296, 303, 496 N.W.2d 87 (1993). The division of settlement proceeds under § 102.29(1) is legislatively mandated and may be deviated from only with the consent of both parties.' *Id.* at 303–04. The proceeds recovered on any third-party tort claim are distributed as follows:

> After deducting the reasonable cost of collection, one-third of the remainder shall in any event be paid to the injured employee or the employee's personal representative or other person entitled to bring action. Out of the balance remaining, the employer, insurance carrier or, if applicable, uninsured employers fund shall be reimbursed for all payments made by it, or which it may be obligated to make in the future, under this chapter, except that it shall not be reimbursed for any payments of increased compensation made or to be made under s. 102.18 (1) (bp), 102.22, 102.35 (3), 102.57 or 102.60. Any balance remaining shall be paid to the employee or the employee's personal representative or other person entitled to bring action. . . .If both the employee or the employee's personal representative or other person entitled to bring action, and the employer, compensation insurer or department, join in the pressing of said claim and are represented by counsel, the attorneys' fees allowed as a part of the costs of collection shall be, unless otherwise agreed upon, divided between such attorneys as directed by the court or by the department.

§ 102.29(1). Thus, the reasonable costs of collection are first deducted from any recovery. These costs include both the employee's and the worker's compensation carrier's attorneys' fees and costs if both attorneys "join in the pressing" of the claim. *Id.*

¶ 21. Anderson argues that to join in the pressing of the claim requires the worker's compensation carrier to demonstrate that its attorney's activities substantially contributed to making the third party pay. He asserts that the worker's compensation carrier should not recover reasonable attorney fees for activities that merely duplicate the activities of the injured party's attorney, or merely document the amount of its lien interest, and are not effective or necessary in procuring a recovery from the third party.

¶ 22. In advancing this argument, Anderson recognizes that the court of appeals held to the contrary in *Zentgraf v. The Hanover Insurance Co.,* 2002 WI App 13, ¶ 14, 250 Wis. 2d 281, 640 N.W.2d 171. Because we agree with and adopt that reasoning, we see no reason to depart from that precedent.

### A

¶ 23. We begin with Wis. Stat. § 102.29(1). That section recognizes an employee's right to maintain a tort claim against a third party who caused the underlying worker's compensation injury, but it gives worker's compensation carriers "the same right." Perhaps most importantly, § 102.29(1) explains that both the employee and the worker's compensation carrier "shall have an equal voice in the prosecution of said claim . . .."

81

¶ 24. If both the employee and the worker's compensation carrier "join in the pressing" of the third-party tort claim and "are represented by counsel, the attorneys' fees allowed as a part of the costs of collection shall be, unless otherwise agreed upon, divided between such attorneys as directed by the court or by the department." *Id.*

B

¶ 25. This court first considered what it meant to join in the pressing of the claim in *Diedrick v. Hartford Accident & Indemnity Co.,* 62 Wis. 2d 759, 216 N.W.2d 193 (1974). In *Diedrick,* this court affirmed that Wis. Stat. § 102.29(1) contemplates but one "reasonable cost of collection" if both the employee and the worker's compensation carrier "join in the pressing" of the third-party claim. *Diedrick,* 62 Wis. 2d at 766–67. Finding § 102.29(1) plain and unambiguous, this court stated, "[t]he statute specifically requires the court approving the settlement to determine the attorneys' fees to be allowed where both the injured party and the compensation carrier joined in bringing the claim to court, and then requires the trial court to divide the fees allowed 'between such attorneys.' " *Id.* at 763–64 (citations omitted).

¶ 26. In bringing a claim to court, the *Diedrick* court recognized that the services the worker's compensation carrier's attorney performed are recoverable even if not completed "at the request of or on behalf of the employee." *Id.* at 767. This court determined that the statute allows the worker's compensation carrier's attorneys to recover a "reasonable fee based on services performed for and on behalf of the carrier." *Id.* "[I]t is immaterial," this court concluded, "whether efforts of

the carrier's counsel contributed to the employee's recovery." *Id.* at 766. Examples of those efforts that were recoverable included the carrier's counsel drafting required legal papers, handling the advance depositions, and participating in the negotiations for settlement. *Id.* at 767.

¶ 27. The court of appeals expanded on what it means to press the claim against the third party in *Zentgraf,* 250 Wis. 2d 281. Following a third-party settlement approval, American, the worker's compensation carrier, argued the circuit court erred by not awarding it its attorney fees as a cost of collection under Wis. Stat. § 102.29(1). Zentgraf, the employee, argued that none of American's activities constituted legal efforts "to prepare the case for trial or to reach a settlement." *Id.,* ¶ 15. Zentgraf contended that absent active participation in the pressing of the principal third-party claim, which he claimed was contributing services toward the successful result, American was not entitled to attorney fees as part of the reasonable cost of collection. *Id.* The court of appeals disagreed.

¶ 28. The court of appeals turned to ordinary dictionary definitions of "press" to understand what it means to join in the pressing of the claim. *Id.,* ¶ 18. The court observed that press meant "to follow through (a course of action)," "to seek to influence, as by insistent arguments; entreat insistently," and "to attempt to force to action; urge on." *Id.* (citations and quotations omitted). Under any of these definitions, the court concluded, American joined in the pressing of the claim against the third party. As examples of American's pressing activities, the court offered:

> In addition to repeatedly notifying the circuit court of the amount of its lien claim and its intent to

participate in the prosecution of the claim against Duame [the third party tortfeasor] and his insurer, counsel for American: (1) was in frequent contact with attorneys for the other parties; (2) responded to requests from both defense counsel and plaintiffs' counsel to produce documents; (3) requested, received, and reviewed medical records from multiple medical institutions; (4) spent time preparing for the final pretrial conference; (5) frequently reviewed the case file to determine the status of discovery and investigation; (6) prepared for and attended a mediation conference; (7) analyzed Wis. Stat. § 102.29 implications for settlement and repeatedly communicated with the Zentgrafs' attorney regarding distribution of the settlement proceeds; (8) prepared a motion to postpone the hearing on the Zentgrafs' motion to approve the settlement and distribution of its proceeds as outlined in their proposed order; (9) prepared a letter brief and affidavit with supporting documentation; and (10) prepared for and attended the motion hearing. Although the Zentgrafs emphasize that the action was settled in April 2000, substantial issues regarding distribution of the settlement funds remained until the circuit court signed the Zentgrafs' proposed order on January 11, 2001.

*Id.,* ¶ 19. Ultimately, the court of appeals remanded the case for further proceedings to determine the attorney fees due. *Id.,* ¶ 20.

¶ 29. We see no reason to supplant the interpretations given to Wis. Stat. § 102.29(1) in *Diedrick* and *Zentgraf* with Anderson's substantial contribution test. Both decisions are consistent with Wis. Stat. § 102.29(1)'s grant that both the injured employee and the worker's compensation carrier have "the same right" to maintain the third-party claim and "an equal voice in the prosecution of said claim." Both decisions

also recognize that the attorneys represent different parties, which may have unaligned interests. Thus, any activities that the attorney takes to bring the claim to court on behalf of his or her client, as expanded in *Zentgraf*, constitute a cost of collection amenable to recovery under § 102.29(1).

¶ 30. To conclude that a worker's compensation carrier cannot recover attorney fees for work that "merely duplicate[s]" the employee's attorney's actions or "simply document the amount of the lien" ignores that this work is performed on behalf of the client, the worker's compensation carrier.[8] As *Zentgraf* illustrated, there can be a laundry list of activities undertaken as part of normal advocacy in bringing a claim to court that has little to do with "substantially contributing to making the third-party pay." Therefore, we will not depart § 102.29(1)'s prior precedent.

## IV

¶ 31. Anderson's second argument is that Accident Fund failed to establish the reasonableness of its claimed costs of collection. In particular, Anderson notes that Accident Fund did not file proof of the hours worked, the rate billed, or an itemization of disbursements.

¶ 32. Accident Fund responds by criticizing Anderson for the same shortcomings. Although

---

[8] That is not to say that all activities the worker's compensation carrier's or the employee's attorney undertakes are recoverable. Wisconsin Stat. § 102.29(1) allows the recovery of only the "reasonable costs of collection." Through the exercise of its discretion, the circuit court may conclude that it would be unreasonable to award duplicative costs and therefore divide the attorneys' fees as it deems appropriate as a "reasonable cost of collection".

Anderson's fee was based on a one-third contingency fee agreement, Accident Fund notes that Anderson has provided no basis upon which to conclude that his fee and costs were reasonable. On this issue, we agree with both parties.

¶ 33. As mentioned above, Wis. Stat. § 102.29(1) contemplates a deduction for costs of collection, and that deduction must be reasonable. *Diedrick,* 62 Wis. 2d at 766–67. In this case, the circuit court awarded $17,730.12 as the reasonable cost of collection on a $25,000 settlement; $10,257.15 to Anderson's attorney ($8,333.33 one-third contingent fee and $1,923.82 in costs), and $7,472.97 to Accident Fund for attorney fees and costs.

■

¶ 34. While the award of attorney fees is a matter left to the circuit court's discretion and is entitled to deference, the circuit court in this case did not consider the reasonableness of the aggregate fees and costs, let alone the reasonableness of the individual fees in the first instance. Instead, the circuit court concluded that it was required to approve Accident Fund's attorney fees. This was an erroneous interpretation of the law, and thus an erroneous exercise of discretion. *See Theis,* 232 Wis. 2d 749, ¶ 8. Considering the lack of information the circuit court had to work from, our review of the record cannot salvage the circuit court's order.

¶ 35. On remand, the circuit court must first determine what constitutes the reasonable cost of collection. Although seemingly simple, this task is complicated here since Anderson's attorney is working on a contingency fee basis while Accident Fund is working on an hourly basis. To determine what the reasonable cost of collection is, the circuit court will have to manage alternate tests to gauge the reasonableness of

the different attorney fees, while bearing in mind that the aggregate of reasonable attorneys' fees may not result in a reasonable cost of collection.[9] We discuss each test in turn.

## A

¶ 36. In *Meyer,* the court of appeals was confronted with whether the circuit court properly exercised its discretion by awarding an employee's attorney a one-third contingent fee (resulting in a $333,333.33 fee) as part of the reasonable cost of collection under Wis. Stat. § 102.29(1). *Meyer,* 233 Wis. 2d 493, ¶¶ 1, 9. For guidance, the court of appeals turned to *Village of Shorewood v. Steinberg,* 174 Wis. 2d 191, 204, 496 N.W.2d 57 (1993), an eminent domain case involving awarding attorneys' fees. The court of appeals noted that in *Village of Shorewood,* this court determined that a contingency fee agreement was to be used only as a guide when calculating reasonable attorney fees; it is not controlling. *Meyer,* 233 Wis. 2d 493, ¶ 13. The court of appeals further observed that the *Village of Shorewood* court held that the circuit court must consider all of the circumstances to determine whether a contingency fee figure is reasonable and looked to the factors in SCR 20:1.5(a) to help steer that determination. *Meyer,* 233 Wis. 2d 493, ¶ 13. Using that framework, the court of appeals determined that the circuit court

[9] Although we caution that the aggregate of reasonable attorney fees and costs does not necessarily translate into the reasonable costs of collection, we acknowledge that through the circuit court's proper exercise of discretion it might. Thus, it is appropriate for the court to first determine the reasonable value of each party's attorney's fees.

properly exercised its discretion by awarding the employee's attorney a one-third contingency fee. *Id.,* ¶ 23.

■■■

¶ 37. As in *Meyer,* the circuit court in this case must evaluate Anderson's one-third contingency fee in light of all the circumstances. The court must not simply enforce the contingency fee agreement. Supreme Court Rule 20:1.5(a) lists factors that help determine the reasonableness of an attorney's fee, which are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

*Id.* Although each factor need not be examined, the circuit court must consider "all the circumstances of the case to determine whether the contingency fee amount is a just and reasonable figure." *Village of Shorewood,* 174 Wis. 2d at 204.

¶ 38. We pause to note that we do not question the propriety of a contingency fee in a third-party tort claim. We recognize that contingency fees play a vital role in ensuring that certain claimants get access to the courts by providing attorneys with a sufficient incentive that outweighs the risks of litigating uncertain claims. We further recognize that contingent fees also counterbalance prior gambles the attorney took that returned little or nothing in terms of compensation. Nevertheless, assessing the reasonableness of Anderson's contingency fee is necessary here as it is the first step in determining the reasonable costs of collection under Wis. Stat. § 102.29(1). *See infra* Part IV.C.

B

¶ 39. Scrutinizing Accident Fund's attorney fees requires a different analysis because Accident Fund's attorney is working on an hourly basis. To determine the reasonableness of Accident Fund's attorney's fees, all parties concede that the circuit court must follow this court's recent decision in *Kolupar*, 275 Wis. 2d 1. In *Kolupar*, this court adopted the lodestar approach for determining reasonable attorney fees in fee-shifting statutes. Under this analysis, the circuit court must first multiply the reasonable hours expended by a reasonable rate. *Id.,* ¶ 29. The circuit court may then make adjustments using the SCR 20:1.5(a) factors. *Id.,* ¶¶ 29–30.

C

¶ 40. After determining the reasonable value for each party's fees and costs, the circuit court's inquiry

does not end. Wisconsin Stat. § 102.29(1) requires deducting the reasonable cost of collection from third-party claim proceeds. The sum of the attorneys' reasonable fees and costs may, but need not, equal a reasonable cost of collection. The circuit court must evaluate the total cost of collection and determine whether that sum is reasonable, in light of, among other things, the recovery. SCR 20:1.5(a)(4).[10]

¶ 41. As in evaluating the reasonableness of the contingency fee and hourly fee, the circuit court has wide discretion here. Examples of factors to consider as highlighted in this case include the quality and quantity of services provided (to weed out costs and fees that are merely duplicative, needless, or unreasonable with regard to pressing the claim), the amount recovered from the third party, and the posture of the case (to take into account whether additional litigation was necessitated by the lack of notice and the need for appellate litigation. *See Pagel v. Kees,* 23 Wis. 2d 462, 472, 127 N.W.2d 816 (1964)).

¶ 42. And finally, after determining the reasonable costs of collection, the court must direct, unless otherwise agreed, how the attorneys' fees are to be divided between the attorneys.

V

¶ 43. To foreclose an issue that will arise on remand, we address a question that emerged during oral argument. On November 16, 2003, Anderson arbitrated his underinsured motorist (UIM) claim and he

---

[10] The trial court should consider "the amount involved and the results obtained".

received $85,000, with a $25,000 reduction for the prior settlement. Accident Fund contends that the circuit court's determination of what constitutes reasonable costs of collection should take into account the UIM claim proceeds, as it suggests that much (if not all) of the groundwork for the UIM claim was laid during the third-party tort claim.

¶ 44. We cannot reconcile Accident Fund's contention with Wis. Stat. § 102.29(1). That section specifically deals with third-party liability, specifically "an action in tort against any other party for such injury or death." *Id.* The worker's compensation carrier has "the same right to make claim or maintain an action in tort against any other party for such injury or death." *Id.* Out of the proceeds of "said claim," the worker's compensation carrier is entitled to the reasonable costs of collection. A UIM claim, however, is not a third-party tort claim. As is an uninsured motorist claim, a UIM claim is a first-party contract claim. *See Berna-Mork v. Jones,* 174 Wis. 2d 645, 651, 498 N.W.2d 221 (1993) ("[U]nder sec. 102.29(1), Stats., an employer or compensation insurer has no right to subrogation against uninsured motorist benefits available to the employee because an action for uninsured motorist benefits is based on contract not tort."); *Danner v. Auto-Owners Ins.,* 2001 WI 90, ¶ 51, 245 Wis. 2d 49, 629 N.W.2d 159 ("Underinsured motorist coverage provides first party coverage that affords compensation for injured persons whenever a tortfeasor is inadequately insured." (citation and quotation omitted)). Thus, we see no basis upon which to conclude that the worker's compensation carrier obtains the benefit of having its fees and costs artificially enlarged by inflating the recovery the injured employee ultimately obtains.

VI

¶ 45. In sum, we conclude that Wis. Stat. § 102.29(1) does not require a worker's compensation attorney to demonstrate that his or her activities substantially contributed to obtaining recovery from the third party, or that the activities were taken on behalf of the employee, in order to join in the pressing of a claim. However, the cost of collection must be reasonable. Because the circuit court did not consider whether the total costs of collection in this case were reasonable in light of the amount recovered, and because the court lacked sufficient information upon which to base its determination regarding attorneys' fees, we reverse the court of appeals' decision and remand the matter to the circuit court for a determination of what the reasonable costs of collection are and how those costs are to be apportioned between the attorneys.

*By the Court.*—Reversed and cause remanded for further proceedings consistent with this opinion.

¶ 46. ANN WALSH BRADLEY, J. (*concurring*). I agree with the majority that upon remand the circuit court must determine the reasonable cost of collection. I also agree with the majority that the sum of reasonable attorney fees and costs does not necessarily equal the "reasonable costs of collection." I write separately, however, to provide further context to the majority's contingent fee discussion.

¶ 47. The majority aptly describes the statutory formula under Wis. Stat. § 102.29 for distribution of proceeds from a third-party recovery. Citing *Diedrick v. Hartford Accident & Indemnity Co.*, 62 Wis. 2d 759, 766–67, 216 N.W.2d 193 (1974), it notes that the statute contemplates a deduction for costs of collection, and

that the deducted amount must be reasonable. Majority op., ¶ 33. The majority also recognizes that the task to determine the reasonable cost of collection is made more complicated here because two firms are seeking attorney fees and because a determination of the reasonable cost of collection encompasses both an hourly fee and a contingent fee. *Id.,* ¶ 35.

¶ 48. Last term in *Kolupar v. Wilde Pontiac Cadillac, Inc.,* 2004 WI 112, 275 Wis. 2d 1, 683 N.W.2d 58, we addressed the proper analytical framework for determining reasonableness of a fee when it is based on an hourly rate. We adopted the lodestar method. *Id.,* ¶ 30. This court acknowledged that the underpinnings of the analysis include the assessment of the reasonable number of hours worked multiplied by a reasonable hourly rate. *Id.,* ¶ 29. After determining that amount, we observed that the application of the factors set forth in SCR 20:1.5 may alter the result of the rate-X-hours equation. *See id.,* ¶ 33–35.

¶ 49. The majority here fails to discuss the underpinnings of the contingent fee agreement and merely directs that the non- exhaustive list of factors set forth in SCR 20:1.5 are to be applied. Majority op., ¶ 37. The problem with the majority's approach is twofold: (1) a discussion of the underpinnings of the contingent fee is necessary to provide the context for the reasonableness determination; and (2) most of the factors set forth in SCR 20:1.5 are not relevant to a contingent fee reasonableness determination.

¶ 50. The underpinnings of the contingent fee are distinct from those of the hourly fee.[1] The normal

---

[1] For a more in-depth discussion of this topic, see Herbert M. Kritzer, *The Wages of Risk: The Returns of Contingency Fee Legal Practice,* 47 DePaul L. Rev. 267 (Winter 1998).

hourly fee purchases the services of an attorney at a predetermined rate. Under a contingent fee, a client purchases more than just services. The contingent fee also provides a form of financing. When using an hourly rate, a client typically pays some amount at the beginning or is billed as the work progresses. By its nature, the contingent fee is normally not collected until the case is finished. As a result, the contingent fee attorney ends up financing the case.

¶ 51. The contingent fee may also provide a form of insurance. That is, if no money is collected, then often the client is liable for nothing, not even the expenses. The contingent fee agreement in this case serves as an example of this type of insurance. The first sentence of the agreement states: "If no amount is collected on your case, the attorney will be entitled to no fee for services and you will not be required to pay out-of-pocket expenses incurred by the attorney." (Underlined in original.)

¶ 52. The contingent fee plays a vital role in our civil litigation system. It serves a gatekeeping function. Cases with little merit will not be brought because they are not worth taking the risk. Attorneys will screen out cases with a low probability of recovery. It also serves, however, as an important tool for access to justice. It opens the courthouse doors to people who could not otherwise afford to bring their cases.

¶ 53. With the differences in background and function, there comes also a difference in the focus of the reasonableness analysis. The focus of the reasonableness inquiry for the contingent fee is not so much tied to the individual hours or efforts spent on a particular case, but rather it encompasses a broader focus. The basic idea behind use of the contingent fee is that in some individual tort cases the attorney may get

what seems like a windfall, but in other cases the attorney can take the case through a long trial and appeal and get nothing. Sometimes the risk pays off, and sometimes it does not. A broader focus is important when assessing the reasonableness of the contingent fee.

¶ 54. In a study of the financial risks attendant to the use of the contingent fee agreement, one commentator explained the broader focus as follows: "The profits from contingency fee work come not from the individual case but from the portfolio of cases that a lawyer handles. Some of the 'investments' in that portfolio do poorly (some are disasters), many do okay and a few do extremely well. As with any type of investment strategy, one must look at the returns from the portfolio as a whole rather than focus on single investments (or cases)." Herbert M. Kritzer, *Investing in Cases: Can You Profit From Contingency Fee Work?*, 70 Wis. Lawyer 10, 45 (August 1997).

¶ 55. Although the majority recognizes that there are differences between a contingent fee and an hourly fee, it fails to discuss the differences in the reasonableness analysis. It instructs the circuit court to evaluate Anderson's fee by applying the factors set forth in SCR 20:1.5 and cites to *Meyer v. Michigan Mutual Insurance Co.*, 2000 WI App 53, 233 Wis. 2d 493, 609 N.W.2d 167.

¶ 56. The majority fails to observe that the court of appeals in the *Meyer* case struggled mightily in trying to fit a reasonableness of contingent fee analysis (a square peg) into SCR 20:1.5(a) (a round hole). To accomplish this task, the *Meyer* court stated that courts did not have to consider all the factors, and determined that the trial court, in the exercise of its discretion, had

95

considered three factors: (1) the time and labor required; (2) the amount of money involved; and (3) the attendant risks. *Id.,* ¶ 16.

¶ 57. The problem with the *Meyer* court discussion underscores the dilemma a court faces when relying on SCR 20:1.5 to assess the reasonableness of a contingent fee. The factors readily apply to an hourly fee determination, but provide little guidance for the determination of the reasonableness of the contingent fee.

¶ 58. To begin, the "risk" factor which played a prominent role in the *Meyer* court's reasonableness determination does not even appear in the factors listed in SCR 20:1.5. Like both the trial court and court of appeals in *Meyer,* I believe that a consideration of "risk" does and should play a prominent role in the reasonableness determination of a contingent fee.

¶ 59. Next, the *Meyer* court recognized, as should this majority, that the "time and labor" factor does not always readily fit the contingent fee analysis. *See id.,* ¶ 18. In an effort to make it fit, it had to redefine the "time and labor" factor.

¶ 60. The *Meyer* court indicated that what it meant by the "time and labor" factor of SCR 20:1.5(a) did not focus on the "substantial hours and efforts expended by Meyer's attorneys" in this *particular* case, but in their "hundreds and hundreds of hours in litigation such as this and in worker's compensation." *Id.* Thus, the court redefined the "time and labor" factor to mean the time and effort expended to acquire expertise in this area of practice.

¶ 61. Finally, the *Meyer* court emphasized that the trial court's determination of reasonableness of the contingent fee is not based on hours worked or time sheets, but on whether the terms of the contingent fee

were reasonable. It then quoted with approval the basis of the trial court's reasonableness determination:

> [T]he [§] 102.29 phraseology of reasonable costs of collection is not meant nor is it to be interpreted as that . . . attorney[s] must prove on an hourly basis or a work time sheet that they had put in that time and that effort to equal that amount that had been gained under the contingent fee contract. Reasonable costs of collection for attorney fees includes whether the arrangement that had been made between the client and the lawyer was reasonable.

> And I can take judicial notice that it is reasonable to have a contingent fee agreement . . . .

*Id.,* ¶ 21.

¶ 62. Given the underpinnings of the contingent fee agreement, I agree with the *Meyer* court that the reasonable costs of collection inquiry includes the threshold inquiry of whether the contingent fee arrangement between the attorney and client was reasonable. Like the court in *Meyer,* I too conclude that it is reasonable to have a contingent fee here.

¶ 63. Ultimately, I do not think that many of the factors of SCR 20:1.5(a) even apply to a reasonableness of contingent fee analysis. The factors in SCR 20:1.5(a) are as follows:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

> (3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.[2]

¶ 64. Although the listed factors seem relevant to a determination of the reasonableness of a fee based on an hourly rate, many seem irrelevant to the reasonableness inquiry for a contingent fee. Except as redefined by the *Meyer* court, the reasonableness of a contingent fee does not normally depend on the time and labor required in a case, as set forth above in (1).

¶ 65. Likewise, the (2) inquiry, which addresses whether the particular employment will preclude other employment by the lawyer, seems to have little or nothing to do with the reasonableness of a contingent fee. The same can be said for the factors set forth in (5), (6), and probably (7).

¶ 66. Upon remand, I think that SCR 20:1.5(a) will be of limited assistance to the circuit court in its reasonableness determination of the contingent fee. Accordingly, although I join the opinion of the majority, for the forgoing reasons I respectfully concur.

---

[2] For further discussion of the eight factors set forth in the ABA Model Code Rule 1.5, which are identical to the eight factors set forth in SCR 20:1.5., see Ankur Parekh and Jay R. Pelkofer, *Lawyers, Ethics, and Fees: Getting Paid Under Model Rule 1.5,* 16 Geo. J. Legal Ethics 767 (Summer 2003).