MAYNARD STEEL CASTING COMPANY,
Plaintiff-Respondent,

v.

Michael T. SHEEDY, Defendant-Appellant.†

Court of Appeals

*No. 2006AP3149. Submitted on briefs September 25, 2007.
—Decided January 23, 2008.*

2008 WI App 27

(Also reported in 746 N.W.2d 816.)

† Petition to review denied 7/28/08.

654

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Thomas J. Nitschke* of *Nitschke & Sika, S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Terry E. Nilles* of *von Briesen & Roper, S.C.*, Milwaukee.

Before Brown, C.J., Anderson, P.J., and Snyder, J.

¶ 1. ANDERSON, P.J. Michael T. Sheedy appeals from a judgment requiring him to disgorge $132,800 in attorney fees. Sheedy asserts the trial court applied the wrong burden of proof; Maynard Steel Casting Company failed to present any expert testimony as to the reasonableness of Sheedy's fees; the trial court improperly substituted its opinion as to the reasonableness of a contingent fee agreement; the trial court erred in invalidating a valid contingent fee agreement; and the trial court erred in holding that Sheedy assumed no risk in representing Maynard Steel.

¶ 2. Contrary to Sheedy's arguments, a contingent fee agreement is only a guide on the question of whether an attorney has charged a reasonable fee. *See Village of Shorewood v. Steinberg*, 174 Wis. 2d 191, 204, 496 N.W.2d 57 (1993). In this case, the trial court properly refused to rubber-stamp the contingent fee agreement and, after examining the appropriate factors

to measure the reasonableness of the fee, it concluded that, under all of the circumstances, the contingency fee amount was unreasonable. We affirm, since the trial court applied the correct burden of proof, examined the relevant factors bearing on reasonableness, and correctly incorporated its knowledge of local practices and billing norms.[1]

¶ 3. Maynard Steel brought this lawsuit against Sheedy seeking to have him disgorge all or part of the $138,571 contingent fee he retained out of Maynard Steel's recovery of $427,395 in the Graphite Electrode Antitrust Class Action Litigation. The complaint pled four causes of action: (1) declaratory relief on the theory the contingent fee agreement was unenforceable, (2) breach of fiduciary duty, (3) unjust enrichment, and (4) relief under the court's inherent power to order the refund of unreasonable attorney fees. Sheedy's answer did not dispute many of Maynard Steel's factual allegations but did reject Maynard Steel's legal claims. In pretrial proceedings, the trial court rejected two rounds of cross-motions for summary judgment and set the case for a bench trial.

¶ 4. After the conclusion of the bench trial, the trial court issued written findings of facts and conclusions of law. The trial court concluded Sheedy's claimed contingency fee of $136,995.13 was unreasonable and that a reasonable fee to compensate Sheedy for his professional services was $4200. The court ordered him to disgorge the difference of $132,800. Sheedy appeals.[2]

---

[1] We are aided in our review by a thorough, well-reasoned and well-documented decision provided by the trial court.

[2] Because Sheedy did not accept an offer of settlement, the trial court assessed interest from the date of the offer and doubled costs; it entered judgment against Sheedy for

*Standard of Review*

■

¶ 5.   Before considering Sheedy's arguments, we will look at our authority to rule on the reasonableness of the contingent fee agreement and the standard of review. "It is established that courts have the inherent power to determine the reasonableness of attorney's fees and to refuse to enforce any contract that calls for clearly excessive or unreasonable fees." *Herro, McAndrews and Porter, S. C. v. Gerhardt*, 62 Wis. 2d 179, 182, 214 N.W.2d 401 (1974), *overruled on other grounds by Standard Theatres, Inc. v. DOT*, 118 Wis. 2d 730, 747, 349 N.W.2d 661 (1984).[3]

¶ 6.   The appropriate standard of review was recently summarized in *Anderson v. MSI Preferred Insurance Co.*, 2005 WI 62, ¶ 19, 281 Wis. 2d 66, 697 N.W.2d 73 (citations omitted):

> Our review of the circuit court's value of reasonable attorney fees and costs is limited to whether the circuit court properly exercised its discretion. A proper exercise of discretion requires the circuit court to employ "a logical rationale based on the appropriate legal principles and facts of record." As this court recently recognized, "We give deference to the circuit court's decision because the circuit court is familiar with local billing norms and will likely have witnessed first-hand the quality of the service rendered by counsel." We will uphold the circuit court's determination unless it erroneously exercised its discretion. "If the circuit court

$167,076.50. Sheedy does not appeal from the assessment of interest and imposition of double costs.

[3] This inherent power of the court to refuse to enforce any contract that calls for unreasonable attorney fees disposes of Sheedy's argument that the court could not void a valid contingent fee agreement absent a showing of coercion or fraud.

proceeds on an erroneous interpretation of the law, the exercise of discretion is erroneous."

In our review of the circuit court's ruling, we do not substitute our judgment for its, "but examine the court's explanation to determine if it employed a logical rationale based on the appropriate legal principles and facts of record." *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2006 WI App 109, ¶ 52, 293 Wis. 2d 668, 721 N.W.2d 127, *review granted*, 2007 WI 16, 298 Wis. 2d 94, 727 N.W.2d 34 (No. 2005AP886).

### Facts

¶ 7. In its findings of fact, the trial court found that Maynard Steel retained Sheedy in May 1998 to assist it in improving the first settlement offer it received from UCAR International to resolve an antitrust claim Maynard Steel was pursuing against UCAR.[4] While Sheedy had never done any legal work for Maynard Steel, he was a friend of the company's president, Edmond Wabiszewski, Jr. Maynard Steel wanted Sheedy to get UCAR to improve the offer and to get the settlement in cash rather than product. Sheedy

---

[4] Maynard Steel's antitrust claim arose out of a civil antitrust class action lawsuit filed in the United States District Court for the Eastern District of Pennsylvania following the U.S. Justice Department's successful prosecution of a number of graphite electrode suppliers for price fixing. UCAR pled guilty in the criminal prosecution and agreed to pay a $110 million fine. Shortly after resolving the criminal action, UCAR sought to settle the class action lawsuit. UCAR's first offer to Maynard Steel was a proposal that Maynard Steel release all claims against UCAR in exchange for an annual credit of $31,000 per year against future purchases. Maynard Steel was not interested in UCAR's offer because it was not impressed with the quality of UCAR's electrodes.

and Wabiszewski agreed that Sheedy would take the work on a contingency basis. Sheedy forwarded a simple "Legal Services Agreement," without a description of the legal services to be provided, to Wabiszewski in May 1998. Maynard Steel signed the agreement in November 1998.

¶ 8. At the same time Sheedy was being retained by Maynard Steel, UCAR was settling the class action lawsuit. In September 1998, Maynard Steel received a notice that UCAR and another defendant had agreed to settle all claims for a minimum of $25 million. Maynard Steel and other class members were invited to submit claims. Maynard Steel prepared the claims form and sent it to Sheedy who forwarded it along with a cover letter that he wrote.

¶ 9. Maynard Steel was successful on the claim it filed; it recovered more than $500,000 from the class action lawsuit.[5] Maynard Steel was responsible for class counsels' legal fees, which were fifteen percent of the

---

[5] Maynard Steel began to receive payments from the class action settlement in June 1999. The checks were mailed to Sheedy, and his assistant arranged for Maynard Steel to endorse the checks. Wabiszewski personally endorsed the checks, although that was not normal company practice. Sheedy would deposit the endorsed check into his trust account, then write himself a check for one-third of the settlement proceeds and a check to Maynard Steel for the balance. At some point, Wabiszewski left his position at Maynard Steel, and he was succeeded by Robert Thill. As checks came in, Thill began to realize that Sheedy was claiming a contingency fee but could not find the "Legal Services Agreement." Although Maynard Steel was having financial problems, Thill did not think it was in the company's best interest to challenge the $5000 to $8000 fee Sheedy was keeping. Things changed in 2003 when a much larger settlement check was received and Sheedy told Thill that Maynard Steel would receive two-thirds of the proceeds. At this

gross proceeds. The net proceeds to Maynard Steel totaled $427,385 and Sheedy retained nearly thirty-three percent, $136,995.13.

¶ 10. The trial court then laid out how Sheedy participated in the civil antitrust class action lawsuit. The court's findings, for the most part, were based on Sheedy's file because Sheedy did not have an independent recollection of his involvement nor did he have any time records. The court found that the only effort Sheedy expended to assist Maynard Steel recover its claim was to mail claim information and supplemental claim information to the claims administrator. In one paragraph, the court summarized the extent of Sheedy's involvement:

> Mr. Sheedy did nothing more than monitor the lawsuit, seek status reports from class counsel and report on the status of the case to Maynard [Steel]. Mr. Sheedy did not conduct any factual investigation of claims against any of Maynard [Steel]'s suppliers . . . nor did he conduct any legal research, nor did he prepare any pleadings or prosecute any legal action. He did not negotiate the settlement, he did not participate in any of the proceedings in the class action and he offered Maynard [Steel] no counsel on the steps it needed to take to prevail in the litigation.

¶ 11. The trial court also summarized the contents of Sheedy's file and made the inference "that it would have taken Mr. Sheedy no more than about a dozen hours to perform all the services listed." And, based upon his experience, the court concluded that "it took no more than another dozen hours for Mr. Sheedy to discuss with Maynard [Steel] the matters summa-

point Thill ordered an investigation that revealed Sheedy had retained $136,995.13 in legal fees.

rized." Using data from the State Bar of Wisconsin and applying the trial court's own experience, the court found that

> taking into account Mr. Sheedy's solid reputation in the fields in which he normally practices, but also considering that he was a novice in the antitrust field, a reasonable client would be willing to pay him $175 per hour to monitor the graphite electrodes class action and report back to the client on significant developments in the case.

¶ 12. Finally, the trial court found that Sheedy "undertook virtually no risk by entering a contingency agreement with Maynard [Steel]." The court pointed out that Sheedy would not have been asked by class counsel to participate in any way either as an associate class counsel or as a contributor to the class counsel fund. The court quoted Sheedy's concession during oral argument that he "had very little experience with class actions and no experience with antitrust litigation." Sheedy also conceded that "all he was required to do was to act as monitoring counsel, in which role his ability was unquestioned." The court observed, "[Sheedy's] conduct during the litigation and his testimony in this litigation betrayed his naïveté."

## The Burden of Proof

¶ 13. Sheedy faults the trial court for assigning him the burden to prove that his contingency fee was reasonable. He asserts that Maynard Steel had the burden because it was seeking judicial relief from what it claimed was a burdensome contingent fee agreement.

¶ 14. The trial court noted that, as the attorney seeking the fee, Sheedy typically would bear the burden of proof to demonstrate the reasonableness of the fee. It

661

went on to observe that because Maynard Steel is seeking relief, it might be argued that the "burden of demonstrating the *un*reasonableness of the fee falls upon Maynard [Steel]." It then observed:

> In this case, however, assigning the burden of proof is not outcome determinative. The record is so lacking in evidence that might be marshaled in support of the reasonableness of the fee Mr. Sheedy seeks to retain and Maynard [Steel] seeks to recover that it does not matter upon whom the burden is placed.

¶ 15. The trial court was correct. As we explain later, when the undisputed evidence is analyzed using the correct factors, *see Meyer v. Michigan Mut. Ins. Co.*, 2000 WI App 53, ¶ 22, 233 Wis. 2d 493, 609 N.W.2d 167, it is impossible to conclude that the contingent fee passes the reasonableness test regardless of who had the burden.

### *Contingent Fee Agreements*

■

¶ 16. Our review of the reasonableness of the contingent fee agreement would not be complete without mention of the significance of such agreements. Contingent fee agreements are an important part of the civil justice system. Such agreements provide access to justice for claimants who otherwise could not afford legal assistance. *See Anderson*, 281 Wis. 2d 66, ¶ 38.

¶ 17. In a concurring opinion in *Anderson*, Justice Bradley highlighted the differences between contingent fee agreements and hourly fee agreements. *Id.*, ¶¶ 49–52. Justice Bradley pointed out that an hourly fee client typically pays a retainer and is billed as work progresses, but a contingency fee client pays nothing

out of pocket until the case is won. *Id.*, ¶¶ 50–51. The justice described the contingent fee as a form of insurance; if the case is lost, the client is not liable for expenses or fees. *Id.*, ¶ 51. Justice Bradley also acknowledged the vital role of contingent fee agreements explaining that they serve as a gatekeeper; attorneys will reject cases with a low probability of recovery. *Id.*, ¶ 52. Finally, the justice explained why the underpinnings of contingent fee agreements were important:

> With the differences in background and function, there comes also a difference in the focus of the reasonableness analysis. The focus of the reasonableness inquiry for the contingent fee is not so much tied to the individual hours or efforts spent on a particular case, but rather it encompasses a broader focus. The basic idea behind use of the contingent fee is that in some individual tort cases the attorney may get what seems like a windfall, but in other cases the attorney can take the case through a long trial and appeal and get nothing. Sometimes the risk pays off, and sometimes it does not. A broader focus is important when assessing the reasonableness of the contingent fee.

*Id.*, ¶ 53. We will employ this broader focus in considering the reasonableness of the contingent fee agreement before us.

### *Unreasonableness*

■

¶ 18.   Sheedy complains that Maynard Steel did not present sufficient evidence that the contingent fee agreement was unreasonable. We disagree. The trial court followed the approved approach and, after an evidentiary hearing, it evaluated the evidence in light of the factors in SCR 20:1.5(a) (2007). *See Village of Shorewood*, 174 Wis. 2d at 204. Those factors are:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

SCR 20:1.5(a) (2007).

¶ 19. While the trial court meticulously considered all eight factors, it was not necessary. *See Meyer*, 233 Wis. 2d 493, ¶ 22. In *Meyer*, we considered the reasonableness of a contingent fee agreement as a part of the reasonable costs of collection under the worker's compensation law. *Id.*, ¶¶ 11–12. In holding that the agreement was reasonable, we held that not all of the SCR 20:1.5(a) factors had to be considered when a court reviews a contingent fee agreement as long as the court reviews "all the circumstances of the case to determine whether the contingency fee amount is a just and reasonable figure." *Meyer*, 233 Wis. 2d 493, ¶ 22 (citation omitted). We approved of the *Meyer* court considering, besides the existence of the contingent fee contract, only

(1) the time and labor involved, (2) the amount of money involved, and (3) the attendant risks involved. *Id.*

¶ 20. Justice Bradley's concurring opinion in *Anderson* discusses our decision in *Meyer. Anderson*, 281 Wis. 2d 66, ¶¶ 56–61. The justice observed that the SCR 20:1.5(a) analysis the *Anderson* majority adopts does not readily fit the contingent fee agreement. *Anderson*, 281 Wis. 2d 66, ¶ 57. Justice Bradley points out that *Meyer*'s "attendant risks" factor is not even a factor in SCR 20:1.5(a), but must play a prominent role in a court's evaluation of the reasonableness of a contingent fee agreement. *Anderson*, 281 Wis. 2d 66, ¶ 58. Finally, the justice agreed with our conclusion in *Meyer* that the "time and labor" factor in SCR 20:1.5(a) must be redefined in the contingent fee analysis "to mean the time and effort expended to acquire expertise in the area of practice." *Anderson*, 281 Wis. 2d 66, ¶ 60.

¶ 21. While the trial court went through all of the factors in SCR 20:1.5(a), we will focus only on the three *Meyer* factors because we conclude that, as in *Meyer*, those three represent a review of all circumstances necessary to determine the reasonableness of the contingent fee agreement. First, the trial court found that Sheedy "conceded in his closing argument brief that 'he had very little experience with class actions and no experience with antitrust litigation.'" Based on this fact, the court reached the conclusion that "Mr. Sheedy lacked the skill and experience in antitrust litigation to prosecute Maynard [Steel]'s claims on his own." With the "time and labor" factor in this contingent fee agreement redefined to be the time and effort expended to acquire expertise in antitrust and class action litigation, Sheedy's concession is sufficient evidence to support the conclusion that the contingent fee agreement was not reasonable.

¶ 22. The second factor is "the amount involved." Maynard Steel's gross recovery was in excess of $500,000. A fifteen-percent fee paid to class counsel reduced this recovery to $427,385.[6] From these undisputed facts, the trial court concluded, "[T]he results obtained for Maynard [Steel] seem impressive, but Mr. Sheedy cannot be given credit for achieving them. I cannot point to any service performed by Mr. Sheedy of which it can be said that, but for such effort, Maynard [Steel] would not have obtained this recovery." The court's findings of fact support this conclusion. From reviewing Sheedy's file, the court found that he spent no more than twenty-four hours in providing legal services to Maynard Steel.[7] In addition to a minimal investment of time, Sheedy did not advance any of his own funds to cover the cost of the litigation.

¶ 23. It should be noted that Maynard Steel retained Sheedy to improve on UCAR's initial settlement offer for Maynard Steel to release all claims against UCAR in exchange for an annual credit of $31,000 per year against future purchases. At first blush, a net recovery of $427,385 would appear to be a great improvement. However, UCAR settled the class action in principle during the time Sheedy was retained, leading to the rational conclusion that Sheedy did not contrib-

---

[6] It strikes us as peculiar that Sheedy is seeking to retain a contingency fee of thirty-three percent when he did not contribute legal expertise, time or his own funds to the class action; on the other hand, class counsel who contributed legal expertise, time and their own funds are keeping a fifteen percent fee. The disparity in the investment and return is further evidence that the contingent fee agreement in this case is unreasonable.

[7] Sheedy's initial contingency fee totaled $136,995.13. On an hourly basis, this equals more than $5700 per hour.

ute to the settlement. We conclude "the amount involved" does not support the reasonableness of the contingent fee agreement.

¶ 24. The final factor that is considered is "the risk involved." The trial court found that Sheedy took virtually no risk. The court found that because of his lack of expertise, there was no risk that he would have been asked to participate in any way or contribute to the class counsel fund. The court found there was no risk that Maynard Steel would have needed Sheedy's help in the event it was targeted with requests for production of documents or subpoenas seeking the testimony of employees. The court also found that there was no risk Maynard Steel would opt out of the class and prosecute its own antitrust action. Based upon these facts, the court concluded:

> [Sheedy] entered the agreement in the midst of an ongoing class action in which other lawyers who already represented Maynard [Steel]'s interests were already taking on the risks of contingent fee litigation, and were already performing all the services necessary to produce the result Maynard [Steel] sought. He took the stage in more or less the final act, after the case had been settled in principle. So, because there was little or no risk that Mr. Sheedy would be invited to appear as counsel in the class action or to pursue separate litigation on behalf of Maynard [Steel], *a contingent agreement was unnecessary* . . . . (Emphasis added.)

¶ 25. Sheedy quarrels with the conclusion that there were no attendant risks to his representation of Maynard Steel. He argues that the trial court's findings come from 20/20 hindsight and, at the time the contract was entered into, the potential risk was unclear. Sheedy ignores an undisputed fact. By the time Maynard Steel signed the contingent fee agreement in November 1998,

UCAR had settled the class action suit. In fact, Maynard Steel executed a proof of claim form concurrently with its execution of the contingent fee agreement.

¶ 26. Sheedy also asserts that Maynard Steel failed to prove that the contingency fee was unreasonable because it failed to present any expert testimony on the unreasonableness of the fee. He points to the trial court's sustaining his objection to a question to Maynard Steel's expert asking if a contingency fee of thirty-three percent was unreasonable. He argues that without the expert's opinion there is no evidence to support the court's conclusion that the contingency fee was unreasonable.

¶ 27. We conclude that expert testimony was not needed. Expert testimony is proper only if such is necessary to assist the trier of fact in determining an issue of fact. *See Cramer v. Theda Clark Mem'l Hosp.*, 45 Wis. 2d 147, 150–51, 172 N.W.2d 427 (1969). When the ultimate fact to be determined is the unreasonableness or reasonableness of attorney fees, the supreme court has held that the trial judge is in an advantageous position to determine the unreasonableness or reasonableness of the fee. *Standard Theatres*, 118 Wis. 2d at 747. The supreme court explained in *Tesch v. Tesch*, 63 Wis. 2d 320, 334–35, 217 N.W.2d 647 (1974):

> [The trial judge] has observed the quality of the services rendered and has access to the file in the case to see all of the work which has gone into the action from its inception. [The judge] has the expertise to evaluate the reasonableness of the fees with regard to the services rendered.

In this case, the trial court, as the trier of fact, observed the quality of legal services rendered, was aware of the

costs incurred in operating a law practice, and knew or could readily find out the going rate for legal services in the community. *See Aspen Servs., Inc. v. IT Corp.*, 220 Wis. 2d 491, 495, 583 N.W.2d 849 (Ct. App. 1998) (footnote and citations omitted). Therefore, the court had the requisite expertise and expert testimony was not necessary.

¶ 28.   Sheedy's final contention is that the "court inserted its expert opinion for that of an expert that the respondent had the burden to provide." He asserts that the court's findings are based on its personal experience, which is unknown to Sheedy and which he was unable to counter with evidence of his own.

■

¶ 29.   If Sheedy is complaining about the court's comparison between the duties of class counsel and Sheedy's monitoring duties, those findings come from the testimony of Maynard Steel's expert, whom the court found persuasive. If he is complaining about the court's findings based upon the court's own experience as a lawyer and that, as a lawyer, the judge was sometimes employed to monitor litigation, and based on his experience as a judge, his complaint is not well founded. As we stated earlier:

> [T]he trial court is in an advantageous position to make a determination as to the reasonableness of a firm's rate. This is because the trial court may be aware of the costs incurred by a firm in managing its legal practice, or is capable of asking to be made aware of them.

*Standard Theatres*, 118 Wis. 2d at 747. The trial court's experience equipped it to find that Sheedy did twenty-four hours of legal services for Maynard Steel, that the average hourly rate in Milwaukee was $175 per hour,

and to conclude that $4200 was a reasonable fee for Sheedy's services.

## Conclusion

¶ 30. In its inherent power to determine the reasonableness of attorney fees, the trial court appropriately refused to rubber-stamp the contingent fee agreement between Maynard Steel and Sheedy. The court, after conducting an evidentiary hearing and consulting the agreement as a guide only, employed a logical rationale to conclude that, under all of the circumstances, a contingent fee of $138,571 was unreasonable. The court was correct in its assessment that the fee was not justified by the time and labor, amount of money, or attendant risks involved. Because it was in an advantageous position to know the quality of services provided, Sheedy's legal ability in this area, and local billing rates, expert testimony was unnecessary. We conclude the court properly exercised its discretion in finding a reasonable fee for Sheedy's services to be $4200. Therefore, we affirm.

*By the Court.*—Judgment affirmed.