**2019 WI App 64**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:        2019AP88

†Petition for Review filed

Complete Title of Case:

> **BRIAN L. SINKLER,**
>
>   **PLAINTIFF-RESPONDENT,**
>
> **NICOLE M. SINKLER,**
>
>   **PLAINTIFF,**
>
>   **V.**
>
> **AMERICAN FAMILY MUTUAL INSURANCE COMPANY
> AND JAMES R. THOMAS,**
>
>   **DEFENDANTS,**
>
> **EMCASCO INSURANCE COMPANY,**
>
>   **†DEFENDANT-APPELLANT.**

---

| | |
|---|---|
| Opinion Filed: | October 22, 2019 |
| Submitted on Briefs: | September 24, 2019 |
| Oral Argument: | |

---

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Seidl, JJ. |
| Concurred: | |
| Dissented: | |

---

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ronald W. Harmeyer* of *Ron Harmeyer Law Office LLC*, |

Milwaukee.

Respondent
ATTORNEYS:     On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Ralph J. Tease* and *Jesse B. Blocher* of *Habush Habush & Rottier S.C.*®, Green Bay.

A nonparty brief was filed by *Michael J. Cerjak* and *Rachel E. Potter* of *Cannon & Dunphy, S.C.*, Brookfield, and *William C. Gleisner III*, of the *Law Offices of William C. Gleisner III*, Brookfield, for the Wisconsin Association for Justice.

COURT OF APPEALS
DECISION
DATED AND FILED

October 22, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP88**

STATE OF WISCONSIN

Cir. Ct. No. 2017CV108

IN COURT OF APPEALS

BRIAN L. SINKLER,

PLAINTIFF-RESPONDENT,

NICOLE M. SINKLER,

PLAINTIFF,

V.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY
AND JAMES R. THOMAS,

DEFENDANTS,

EMCASCO INSURANCE COMPANY,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Brown County: MARC A. HAMMER, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1 STARK, P.J. EMCASCO Insurance Company ("EMC") appeals an order distributing the settlement proceeds in a third-party liability action filed under WIS. STAT. § 102.29 (2017-18).[1] EMC argues the circuit court erroneously exercised its discretion by failing to distribute any portion of the reasonable cost of collection to EMC's attorneys, the Ron Harmeyer Law Office LLC ("the Harmeyer firm"). In addition, EMC urges this court to adopt a per se rule that the attorney fees awarded as a reasonable cost of collection in a third-party liability action must be divided between the injured employee's attorneys and the worker's compensation carrier's attorneys on a pro rata basis—that is, in proportion to their clients' respective recoveries.

¶2 We conclude the circuit court properly applied the three-part framework set forth in *Anderson v. MSI Preferred Insurance Co.*, 2005 WI 62, 281 Wis. 2d 66, 697 N.W.2d 73, when determining and apportioning the reasonable cost of collection in this case. Under the circumstances, the court did not erroneously exercise its discretion by refusing to distribute any portion of the reasonable cost of collection to the Harmeyer firm. We decline EMC's invitation to adopt a per se rule requiring the pro rata distribution of the reasonable cost of collection. Accordingly, we affirm the order distributing the settlement proceeds.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

## BACKGROUND

¶3 Brian Sinkler was injured in a motor vehicle accident during the course of his employment.[2] Brian made a claim to EMC for worker's compensation benefits, and EMC ultimately paid benefits totaling $51,321.03 on his behalf.

¶4 On April 28, 2015, Brian and his wife, Nicole, retained attorney Ralph Tease from the law firm of Habush Habush & Rottier, S.C. ("the Habush firm") to pursue a third-party liability claim under WIS. STAT. § 102.29 against the driver of the other vehicle involved in the accident, James Thomas, and Thomas's automobile insurer, American Family Mutual Insurance Company. Brian signed a retainer agreement that stated, in relevant part: "I agree to give [the Habush firm] 33 1/3% of the recovery from my case as their fee. … In the event there is no recovery, I will not be required to pay [the Habush firm]."

¶5 On January 27, 2017, the Sinklers—represented by the Habush firm—filed the instant third-party liability lawsuit against Thomas and American Family. The Sinklers' complaint asserted a negligence claim on Brian's behalf and a loss of consortium claim on Nicole's behalf. EMC was also named as a defendant in the Sinklers' lawsuit, based on the worker's compensation benefits it had paid on Brian's behalf.[3]

---

[2] To avoid confusion, we refer to Brian Sinkler and his wife, Nicole Sinkler, by their first names throughout the remainder of this opinion. We refer to Brian and Nicole, collectively, as "the Sinklers."

[3] *See* WIS. STAT. § 102.29(1)(a) (stating a worker's compensation insurer that has paid benefits on an employee's behalf has the "same right" as the employee to "maintain an action in tort against any other party" for the employee's injury or death).

¶6    On March 23, 2017—just shy of two years after the Sinklers retained the Habush firm—EMC retained the Harmeyer firm to represent it in the Sinklers' third-party liability lawsuit.  The retainer agreement that EMC executed contained the following provisions regarding the Harmeyer firm's fee:

> Subject to Wis. Stat. §102.29, client and [the Harmeyer firm] agree that, with regard to recoveries in tort:
>
> (a) [The Harmeyer firm's] attorney fee shall be contingent upon client's recovery.  [The Harmeyer firm] will not charge client an hourly fee under any circumstances.
>
> (b) [The Harmeyer firm's] attorney fee shall be 25% of the gross recovery if the claim is settled before a lawsuit is filed, and one-third of the gross recovery if the claim is settled after a lawsuit is filed.  [The Harmeyer firm] and client agree that this is a "reasonable cost of collection," as that terms [sic] is used in Wis. Stat. §102.29.
>
> (c) If [Brian] retains his … own attorney, that attorney shall have no right to recover any fee based, or otherwise contingent, on client's recovery.  Client expressly rejects any attempt by any attorney other than [the Harmeyer firm] to charge a fee for any recovery realized by client.
>
> (d) In the event a court … orders the Wis. Stat. § 102.29 reasonable cost of collection attorney fee to be divided between [the Harmeyer firm] and [Brian's] attorney, [the Harmeyer firm] and client agree that no more than one-third of the gross recovery subject to the Wis. Stat. § 102.29 distribution formula shall be considered a "reasonable cost of collection."  No more than one-third of the gross recovery subject to the Wis. Stat. § 102.29 distribution formula shall be divided between the attorneys.  Client rejects any attempt to "stack" attorney fees in a manner which would result in more than one-third of the gross recovery being paid for attorney fees.
>
> (e) In the event a court orders the Wis. Stat. §102.29 reasonable cost of collection attorney fee to be divided between [the Harmeyer firm] and [Brian's] attorney, [the Harmeyer firm] and client agree that the appropriate division between [the Harmeyer firm] and … [Brian's] attorney shall be a pro rata division of the

attorney fee in the same proportion as client's net recovery to the employee's net recovery.

¶7 Following a mediation on December 4, 2018, American Family agreed to pay $175,000 to settle the Sinklers' claims. The parties further agreed that thirty percent of that amount—or $52,500—would be allocated to Nicole for her loss of consortium claim. However, EMC and the Sinklers disputed how the remaining $122,500 in settlement proceeds should be distributed.

¶8 The formula for dividing the proceeds of a third-party liability claim is set forth in WIS. STAT. § 102.29(1)(b). After deducting the amount attributable to any loss of consortium claim,[4] the first step of the distribution formula is to subtract the "reasonable cost of collection" from the settlement amount. Sec. 102.29(1)(b)1. Under § 102.29(1)(c), if both the employee and the worker's compensation insurer were represented by counsel and "join[ed] in the pressing" of the claim, then "the attorney fees allowed as a part of the costs of collection shall be, unless otherwise agreed upon, divided between the attorneys for those parties as directed by the court."

¶9 After the reasonable cost of collection is deducted from the proceeds of a third-party liability claim, one-third of the remaining amount is paid to the injured employee. WIS. STAT. § 102.29(1)(b)1. After that deduction is made, the worker's compensation insurer is reimbursed for any benefits that it either paid on the employee's behalf or may later be obligated to pay. Sec. 102.29(1)(b)2. The

---

[4] *See DeMeulenaere v. Transport Ins. Co.*, 116 Wis. 2d 322, 325, 342 N.W.2d 56 (Ct. App. 1983) (stating an award for loss of consortium "is not to be considered" in the statutory distribution formula).

employee is then entitled to any remaining proceeds of the claim. Sec. 102.29(1)(b)3.

¶10   The dispute between EMC and the Sinklers pertained to the first step of the statutory distribution formula—namely, the deduction of the "reasonable cost of collection." *See* WIS. STAT. § 102.29(1)(b)1.   The Sinklers asserted that after deducting Nicole's award for loss of consortium, $43,132.22 should be paid to the Habush firm as "costs of collection."   That amount included the Habush firm's one-third contingency fee of $40,833.33,[5] plus $2298.89 in costs.   The Sinklers' calculations did not provide for the distribution of any portion of the reasonable cost of collection to the Harmeyer firm.[6]

¶11   EMC, in turn, argued that the reasonable cost of collection was $40,833.33—one-third of $122,500.   EMC contended that amount should be distributed between the Habush firm and the Harmeyer firm "on a pro rata basis, based on their respective clients' recoveries."   According to EMC's calculations, this approach would result in the Habush firm receiving $14,087.50 (34.5% of the reasonable cost of collection) and the Harmeyer firm receiving $26,745.83 (65.5%

---

[5] The Habush firm determined the amount of its contingency fee by calculating one-third of $122,500—the "gross recovery" on the third-party liability claim after deducting Nicole's award for loss of consortium.

[6] Pursuant to the Sinklers' calculations, after deducting $43,132.22 from the gross recovery of $122,500, $79,367.78 in settlement proceeds remained.   The Sinklers proposed that one-third of that amount ($26,455.93) would be distributed to Brian, as required by WIS. STAT. § 102.29(1)(b)1.   That would leave a balance of $52,911.85, of which $51,321.03 would be paid to EMC "in full reimbursement of its statutory worker's compensation lien."   The Sinklers proposed that the remaining balance of $1590.82 would be "designated as a credit, or cushion, to [EMC], against any additional claim for indemnity or medical-related worker's compensation benefits made by or on behalf of [Brian]."

of the reasonable cost of collection).[7] EMC further asserted that each firm should receive its respective litigation costs—i.e., $2298.89 for the Habush firm and $977.71 for the Harmeyer firm.

¶12 Following briefing by the parties and a nonevidentiary hearing, the circuit court concluded that the Habush firm was entitled to recover $43,132.22 as the reasonable cost of collection. It awarded no portion of the reasonable cost of collection to the Harmeyer firm. EMC now appeals, arguing that the court erroneously exercised its discretion by failing to award any portion of the reasonable cost of collection to its counsel. EMC further contends that this court should adopt a per se rule requiring the reasonable cost of collection to be divided pro rata between an injured employee's attorneys and a worker's compensation carrier's attorneys in proportion to their clients' respective recoveries.

## DISCUSSION

### I. Amount and division of the reasonable cost of collection

¶13 As noted above, the reasonable cost of collection in a third-party liability action includes "both the employee's and the worker's compensation carrier's attorneys' fees and costs," as long as both attorneys joined in the pressing of the claim. *Anderson*, 281 Wis. 2d 66, ¶20; *see also* WIS. STAT. § 102.29(1)(c).

---

[7] After deducting the reasonable cost of collection and both law firms' litigation costs from $122,500, EMC asserted there was a "net recovery" of $78,390.07. EMC contended those funds should be distributed as follows: (1) one-third of the net recovery ($26,130.02) should be distributed to Brian; (2) EMC should recover $51,321.03 "in full satisfaction of its claim"; and (3) the remaining $939.02 should be distributed to Brian "as a cushion against future worker's compensation benefits." Thus, pursuant to EMC's calculations, Brian received 34.5% of the net recovery, and EMC received 65.5% of the net recovery.

In this case, it is undisputed that the Habush firm engaged in pressing the third-party liability claim on the Sinklers' behalf. In addition, the circuit court found—and it appears undisputed on appeal—that the Harmeyer firm joined in the pressing of the claim on behalf of EMC. It is further undisputed that the parties did not agree as to how the reasonable cost of collection should be divided. Therefore, § 102.29(1)(c) required the court to divide the reasonable cost of collection between the Habush and Harmeyer firms.

¶14 The division of the reasonable cost of collection in a third-party liability lawsuit is discretionary, and we will affirm the circuit court's ruling as long as the court properly exercised its discretion. *See Anderson*, 281 Wis. 2d 66, ¶19. A court properly exercises its discretion when it employs a logical rationale based on the facts of record and the appropriate legal principles. *Id.* Our review of a circuit court's discretionary decisions may involve underlying questions of law and fact. *See Covelli v. Covelli*, 2006 WI App 121, ¶13, 293 Wis. 2d 707, 718 N.W.2d 260. We review any questions of law independently, but we will not disturb the circuit court's factual findings unless they are clearly erroneous. *See id.*

¶15 In *Anderson*, our supreme court set forth a three-step process that a circuit court must follow when determining and apportioning the reasonable cost of collection in a third-party liability action. *See Vande Corput v. Pekin Ins. Co.*, 2018 WI App 56, ¶17, 384 Wis. 2d 252, 918 N.W.2d 117. First, the court determines the "reasonable value for each party's fees and costs." *Anderson*, 281 Wis. 2d 66, ¶40. Second, the court must "evaluate the total cost of collection and determine whether that sum is reasonable, in light of, among other things, the recovery." *Id.* When making this determination, the court may consider factors such as the quality and quantity of the services provided and the posture of the

case. ***Id.***, ¶41. "The sum of the attorneys' reasonable fees and costs may, but need not, equal a reasonable cost of collection." ***Id.***, ¶40. Under the third and final step of the analysis, "the court must direct, unless otherwise agreed, how the attorneys' fees are to be divided between the attorneys." ***Id.***, ¶42.

¶16 For the reasons explained below, we conclude the circuit court properly exercised its discretion with respect to each step of the ***Anderson*** analysis. As such, the court did not erroneously exercise its discretion by declining to award the Harmeyer firm any portion of the reasonable cost of collection.

*A. Step 1: The reasonable value of each party's attorney fees*

¶17 Consistent with ***Anderson***, the circuit court began by addressing the reasonable value of each party's attorney fees. When performing this step of the ***Anderson*** analysis, a court "is typically guided by the respective attorneys' fee agreements." ***Vande Corput***, 384 Wis. 2d 252, ¶27.

¶18 In this case, both EMC and the Sinklers entered into contingency fee agreements with their respective attorneys. ***Anderson*** explained that a circuit court "must not simply enforce [a] contingency fee agreement" in a third-party liability action but must instead evaluate that agreement "in light of all the circumstances," using the factors set forth in SCR 20:1.5(a). ***Anderson***, 281 Wis. 2d 66, ¶37. Those factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

SCR 20:15(1)(a). A court need not discuss each of these factors, but it must consider "all the circumstances of the case to determine whether the contingency fee amount is a just and reasonable figure." *Anderson*, 281 Wis. 2d 66, ¶37 (quoting *Village of Shorewood v. Steinberg*, 174 Wis. 2d 191, 204, 496 N.W.2d 57 (1993)).

### i. The Habush firm's attorney fees

¶19 Here, the circuit court began by assessing the reasonableness of the Habush firm's one-third contingency fee agreement. The court first emphasized that contingency fee agreements are critical to an employee's ability to retain counsel in a third-party liability action. *See* SCR 20:1.5(a)(8). Quoting *Anderson*, the court observed that contingency fees "play a vital role in ensuring that certain claimants get access to the courts by providing attorneys with a sufficient incentive that outweighs the risks of litigating uncertain claims." *Anderson*, 281 Wis. 2d 66, ¶38. Citing an affidavit submitted by attorney George Burnett in support of the Sinklers' position, the court further observed that in the context of third-party liability claims, "[m]ost individual claimants cannot afford to hire a

lawyer on an hourly basis to pursue their claims nor would they be able to cover the expenses incurred." The court continued:

> In fact, without the possibility of recovering the full 1/3 of the gross recovery contemplated by customary contingency fee agreements, attorneys would be less willing to represent clients in such third party liability actions, particularly when the gross recovery is likely to be small or when the case presents complex issues.

¶20 The circuit court also found that the Habush firm's contingency fee agreement—which entitled the Habush firm to one-third of the gross recovery on the third-party liability claim—was "customary" in the context of third-party liability actions. *See* SCR 20:1.5(a)(3). In support of that finding, the court relied on attorney Burnett's affidavit, which stated that: (1) employees pursuing third-party liability claims under WIS. STAT. § 102.29 "almost always retain their lawyers on a contingent fee basis"; and (2) the "customary contingent fee charged by attorneys representing employees in [§] 102.29 claims is usually 1/3 of the gross value of the personal injury or death claim plus reasonable expenses incurred in prosecuting the claim."

¶21 The circuit court next considered "the time and labor required," "the skill requisite to perform the legal service properly," and the "experience, reputation, and ability of the lawyer or lawyers performing the services." *See* SCR 20:1.5(a)(1), (7). The court determined those factors "weigh[ed] heavily in favor of a determination that the Habush firm's fee [was] reasonable." The court quoted one of our prior decisions, in which we stated the "'time and labor' factor in SCR 20:1.5(a) must be redefined in the contingent fee analysis 'to mean the time and effort expended to acquire expertise in the area of practice.'" *Maynard Steel Casting Co. v. Sheedy*, 2008 WI App 27, ¶20, 307 Wis. 2d 653, 746 N.W.2d 816 (quoting *Anderson*, 281 Wis. 2d 66, ¶60 (Ann Walsh Bradley, J.,

concurring)). The court then noted that attorney Tease had "not only expended significant effort to press Brian's [WIS. STAT. §] 102.29 claim in this particular case, he ha[d] also been practicing law for 36 years, the last 22 of which ha[d] been devoted to plaintiff personal injury litigation," including a significant number of third-party liability claims. The court's findings regarding attorney Tease's experience and expertise were supported by attorney Burnett's affidavit, which stated:

> I have known and dealt with Ralph Tease, and [the Habush firm] for over 30 years. Mr. Tease and I have tried cases together and against each other. I have also been involved in many litigation matters with [the Habush firm]. In all my dealings with Mr. Tease and his law firm I have found them to be highly competent, extremely experienced, and well-prepared lawyers. They have an outstanding reputation in the community and from my own personal observations, obtain excellent results on behalf of their clients.

¶22 In addition, the Sinklers introduced evidence indicating that the Habush firm aggressively pursued the third-party liability claim by: gathering police reports, obtaining photographs, and interviewing eyewitnesses; collecting medical records and bills related to Brian's injuries; engaging in hundreds of communications with Brian, his doctors, law enforcement, witnesses, American Family, and EMC; obtaining a permanency report from Brian's primary treating physician; serving pleadings and discovery on the other parties; preparing Brian for his deposition; filing a designation of expert witnesses; preparing a detailed mediation statement; and successfully negotiating a settlement at mediation. This evidence further supported the circuit court's finding that the "time and labor" factor in SCR 20:1.5(a)(1) weighed in favor of determining that the Habush firm's one-third contingency fee was reasonable.

¶23    The circuit court also considered the amount of money involved and the results obtained by the Habush firm. *See* SCR 20:1.5(a)(4). The court noted that EMC had paid Brian $51,321.03 in benefits, and that by "securing a total settlement amount of $122,500 … the Habush firm ensured not only that Brian would receive a reasonable settlement after the cost of collection is deducted, but also likely ensured that there would be a surplus remaining for Brian after EMC was fully reimbursed."

¶24    Finally, the circuit court considered a factor that is not listed in SCR 20:1.5(a), but which this court has previously determined to be relevant in assessing the reasonableness of a contingency fee—namely, the "attendant risks" involved in litigating the client's claim. *See Maynard Steel*, 307 Wis. 2d 653, ¶20 (citing *Anderson*, 281 Wis. 2d 66, ¶58 (Ann Walsh Bradley, J., concurring)); *see also Meyer v. Michigan Mut. Ins. Co.*, 2000 WI App 53, ¶20, 233 Wis. 2d 493, 609 N.W.2d 167. The court explained:

> Here, the Habush firm undertook a significant risk in representing Brian in his [WIS. STAT. §] 102.29 action. The firm expended a significant amount of work on Brian's claim for almost two years following its retainer in April 2015 in order to ensure the claim was adequately prepared before filing this lawsuit. Had it failed to recover a judgment in favor of Brian, the Habush firm would have had to absorb all of the costs it had advanced in the action in addition to receiving no fee for the hours its attorneys had expended working on Brian's claim. Thus, the risks attendant to representing Brian in this action weigh heavily in favor of a determination that Habush's 1/3 contingency fee is reasonable.

¶25    As the above summary demonstrates, the circuit court considered multiple relevant and appropriate factors when assessing the reasonableness of the

13

Habush firm's one-third contingency fee.[8]  EMC does not argue that any of the factors considered by the court were improper or that any of the court's factual findings regarding those factors—including its findings regarding the nature and quality of the Habush firm's representation—were clearly erroneous.  Based on those findings, the court did not erroneously exercise its discretion by determining that the Habush firm's fee agreement was reasonable and that, as a result, the reasonable value of the Habush firm's attorney fees was one-third of the gross recovery on the third-party liability claim.

¶26    Nonetheless, EMC argues the circuit court erred in determining the reasonable value of the Habush firm's attorney fees because the court "fail[ed] to give proper attention to the actual wording of the [Habush firm's] fee agreement," which stated that Brian agreed to pay the Habush firm one-third "of the recovery from *my case* as their fee."  (Emphasis added.)  EMC notes that the proceeds of a third-party liability claim "do not belong to the injured employee" but must instead be apportioned between the employee and any worker's compensation insurer that paid benefits on the employee's behalf.  *See Adams v. Northland Equip. Co.*, 2014 WI 79, ¶41, 356 Wis. 2d 529, 850 N.W.2d 272.  EMC therefore argues the court erred by determining that the Habush firm was entitled to one-third of the gross recovery on the third-party liability claim—which included both Brian's recovery and EMC's recovery.

---

[8] Although the circuit court did not expressly consider all of the factors set forth in SCR 20:1.5(a) when assessing the Habush firm's contingency fee agreement, EMC does not argue that the court erroneously exercised its discretion by failing to consider any additional factors.  As noted above, a court need not examine every factor in SCR 20:1.5(a) when determining whether a fee agreement is reasonable. *Anderson v. MSI Preferred Ins. Co.*, 2005 WI 62, ¶37, 281 Wis. 2d 66, 697 N.W.2d 73.

¶27    We reject EMC's interpretation of the Habush firm's fee agreement. The agreement provided that Brian would pay the Habush firm one-third of "*the recovery from my case*," not one-third of *my* recovery.  (Emphasis added.)  The term "my case" in the fee agreement clearly referred to the single third-party liability claim asserted in the Sinklers' complaint, the proceeds of which—as EMC correctly notes—belonged to both Brian and EMC.  Thus, under the plain language of the fee agreement, the Habush firm was entitled to one-third of "the recovery" on the third-party liability claim, not just to one-third of Brian's share of the recovery.

¶28    Moreover, even if we concluded that the fee agreement's use of the term "my case" was ambiguous, we would nevertheless adopt the interpretation advanced by the Sinklers and the Habush firm.  The primary objective in construing a contract is to carry out the parties' intent. ***Beidel v. Sideline Software, Inc.***, 2013 WI 56, ¶56, 348 Wis. 2d 360, 842 N.W.2d 240.  Accordingly, in the event of an ambiguity, "evidence of practical construction by the parties is highly probative of the intended meaning of those terms and the court will normally adopt that interpretation of the contract which the parties themselves have adopted." ***Zweck v. D. P. Way Corp.***, 70 Wis. 2d 426, 435, 234 N.W.2d 921 (1975).

¶29    Here, the only parties to the fee agreement—Brian and the Habush firm—agree that the one-third contingency fee set forth in the agreement was intended to apply to the gross recovery on the third-party liability claim—not just to Brian's share of the gross recovery.  In addition, attorney Burnett averred that, in Wisconsin, the "customary contingent fee charged by attorneys representing employees in [WIS. STAT. §] 102.29 claims is usually 1/3 of the *gross value* of the personal injury or death claim."  (Emphasis added.)  On this record, we cannot

15

conclude that the circuit court erroneously exercised its discretion by concluding the reasonable value of the Habush firm's attorney fees was one-third of the gross recovery on the third-party liability claim.

ii. The Harmeyer firm's attorney fees

¶30 The circuit court next addressed the reasonableness of the Harmeyer firm's contingency fee agreement. As discussed above, that agreement provided that: (1) the Harmeyer firm would be entitled to one-third of the "gross recovery" if the third-party liability claim was settled after a lawsuit was filed; (2) one-third of the gross recovery was equal to the "reasonable cost of collection," for purposes of WIS. STAT. § 102.29; (3) Brian's attorneys would not be entitled to recover any fee based on EMC's recovery; (4) in the event of a court-ordered division of the reasonable cost of collection between the Harmeyer firm and Brian's attorneys, "[n]o more than one-third of the gross recovery" would be divided between the parties' attorneys; and (5) the reasonable cost of collection would be divided between the Harmeyer firm and Brian's attorneys "in the same proportion as [EMC's] net recovery to [Brian's] net recovery."

¶31 After considering several of the factors set forth in SCR 20:1.5(a), the circuit court determined that the Harmeyer firm's contingency fee agreement was unreasonable.[9] The court began by considering the "time and labor required" and the "the experience, reputation, and ability of the lawyer or lawyers

[9] EMC asserts that the circuit court erred by failing to consider the factors listed in SCR 20:1.5(a) when assessing the reasonableness of the Harmeyer firm's fee agreement. However, as the subsequent discussion shows, EMC's assertion is patently incorrect, as the court expressly addressed several of the SCR 20:1.5(a) factors when analyzing whether the Harmeyer firm's fee agreement was reasonable.

16

performing the services." *See* SCR 20:1.5(a)(1), (7). The court concluded those factors were "not particularly persuasive with respect to the reasonableness of the Harmeyer firm's fee." The court noted that while attorney Harmeyer had been in practice for twenty-six years and had represented worker's compensation insurers in over 100 third-party liability actions, attorney Harmeyer's "participation in this action was limited to the mediation." The bulk of the Harmeyer firm's work was instead performed by attorney Harmeyer's associate, attorney Hillary Nester, who the court found had been admitted to practice law in Wisconsin in January 2015 and therefore had "expended far less time and effort to acquire expertise in the area of [WIS. STAT. §] 102.29 actions."[10]

¶32 The circuit court further observed, based on the averments in attorney Harmeyer's own affidavit, that attorney Harmeyer's role in the mediation was "minimal": "he shared EMC's position with and received updates from the mediator, proposed a resolution of Nicole's loss of consortium claim (which the Sinklers accepted without dispute), and negotiated with the mediator and Attorney Tease about the division of the reasonable costs of collection." The court also noted that the Harmeyer firm "was not retained until almost two years after the Habush firm had begun investigating Brian's [WIS. STAT. §] 102.29 claim, and almost two months after this action was filed." For these reasons, the court stated the amount of time and labor expended by the Harmeyer firm "in this specific

---

[10] EMC asserts it was inappropriate for the circuit court to consider attorney Nester's relative inexperience when assessing the reasonableness of the Harmeyer firm's fee agreement. We are not persuaded, as SCR 20:1.5(a)(7) expressly directs courts to consider "the experience, reputation, and ability of the lawyer or lawyers performing the services."

action appears to have been significantly less than that expended by the Habush firm."[11]

¶33 The circuit court next considered the contingent nature of the Harmeyer firm's fee agreement and the "non-customary use of contingency fees in representation of worker's compensation insurers."[12]  *See* SCR 20:1.5(a)(3), (8). In support of its finding that the Harmeyer firm's fee agreement was not customary, the court relied on the Harmeyer firm's own concession that its fee agreement was "untraditional."  The court also relied on attorney Burnett's averment that "[t]he normal practice is for worker's compensation insurers to pay their attorneys for those services independently," rather than on a contingency fee basis.[13]

---

[11] This finding differentiates the instant case from *Vande Corput v. Pekin Insurance Co.*, 2018 WI App 56, ¶14, 384 Wis. 2d 252, 918 N.W.2d 117, in which the circuit court made an express finding that there was "no reason to believe that either [the employee's attorneys or the worker's compensation insurer's attorneys] worked harder or did more to secure" the "significant" settlement of the third-party liability claim.

[12] As noted above, contingency fee agreements serve an important role "in ensuring that certain claimants get access to the courts by providing attorneys with a sufficient incentive that outweighs the risks of litigating uncertain claims."  *Anderson*, 281 Wis. 2d 66, ¶38.  However, we agree with the Sinklers that unlike most personal injury claimants, worker's compensation insurers "do not lack for resources to hire competent lawyers," and, accordingly, contingency fee agreements do not serve the same vital purpose with respect to worker's compensation insurers as they do with respect to individual claimants.

[13] On appeal, EMC cites other evidence in support of its claim that the Harmeyer firm's fee agreement is customary.  However, a factual finding is not clearly erroneous merely because there is evidence in the record that would support a contrary finding.  *See Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 249, 274 N.W.2d 647 (1979).  "Rather, to command a reversal, such evidence in support of a contrary finding must itself constitute the great weight and clear preponderance of the evidence."  *Id.* at 249-50.  That is not the case here, and we therefore uphold the circuit court's finding that the Harmeyer firm's fee agreement is not customary.

(continued)

18

¶34   The circuit court also considered the "amount involved and the results obtained." *See* SCR 20:1.5(a)(4). The court specifically found that the Harmeyer firm did not have a "significant impact on the amount of EMC's recovery in the [WIS. STAT. §] 102.29 action" and that its efforts did not "promote[] the settlement" of the claim. In support of these findings, the court observed that the amount of EMC's recovery was "guaranteed by the statutory formula," and even if EMC had declined to hire its own counsel, "it would still have been entitled to … the entire amount of its worker's compensation lien."

¶35   When discussing the results obtained as a result of the Harmeyer firm's work, the circuit court also cited attorney Harmeyer's averments regarding his limited participation in the mediation. In addition, the court relied on the affidavit of attorney Gina Meierbachtol—counsel for American Family and Thomas—who averred that no one from the Harmeyer firm had entered into settlement discussions with her before, during, or after the mediation and that "aside from providing updated lien figures," the Harmeyer firm did not do anything to "move[] this case towards the settlement of $175,000.00." The court also cited attorney Burnett's averment that "it would be wasteful and outside customary practice for attorneys representing a carrier to demand a contingent fee from the gross proceeds of the [WIS. STAT. §] 102.29 claim unless their efforts have promoted the settlement or disposition by trial of the claim."

---

EMC also asserts that even if the Harmeyer firm's fee agreement is not customary, that fact provides no basis to deny the Harmeyer firm a recovery. We reject this argument because SCR 20:1.5(a)(3) directs courts to consider "the fee customarily charged in the locality for similar legal services." Moreover, the circuit court did not deny the Harmeyer firm a recovery based solely on the fact that its fee agreement was not customary. That was merely one factor the court considered in determining that the agreement was unreasonable under the circumstances.

¶36 The circuit court further considered the fact that much of the work performed by the Harmeyer firm was duplicative of work that had already been performed by other attorneys involved in the case.[14] For instance, the record shows that the Harmeyer firm served discovery requests on the Sinklers and on American Family and Thomas that were nearly identical to discovery requests that had already been served on those parties. In addition, the Harmeyer firm refused to share in the medical records that had already been collected by the Habush firm and by attorney Meierbachtol and instead insisted on obtaining its own copies of Brian's medical records. Furthermore, attorney Nester traveled from Milwaukee to Green Bay for Brian's deposition, but she failed to ask any questions, raise any objections, or join in any of the objections raised by attorney Tease. This evidence supported the court's finding that much of the work performed by the Harmeyer firm "merely duplicated work completed by other participants in this lawsuit, particularly with respect to discovery."

¶37 EMC argues the circuit court erred by concluding that the Harmeyer firm did not have a "significant impact" on the amount of EMC's recovery. EMC asserts this conclusion is inconsistent with the court's earlier finding that the Harmeyer firm "did engage in 'pressing of the claim'" for EMC. This argument is unpersuasive. The mere fact that a party and/or its attorneys joined in the pressing of a claim, for purposes of WIS. STAT. § 102.29(1)(c), does not compel a

---

[14] A court may not conclude that counsel for a worker's compensation insurer did not "join in the pressing" of a third-party liability claim under WIS. STAT. § 102.29(1)(c) simply because the work counsel performed was duplicative of work performed by the employee's attorneys. *See Anderson*, 281 Wis. 2d 66, ¶¶21-22. However, in assessing the reasonableness of counsel's claimed fee, the court may consider "the quality and quantity of services provided" in order to "weed out costs and fees that are merely duplicative, needless, or unreasonable with regard to pressing the claim." *Id.*, ¶41.

conclusion that the party's attorneys performed work that significantly affected the amount of the party's recovery. Here, for all of the reasons discussed above, the court could reasonably conclude that even though EMC and the Harmeyer firm joined in the pressing of the third-party liability claim, the ultimate impact of the Harmeyer firm's work on EMC's recovery was minimal.

¶38    EMC also cites the circuit court's finding that EMC's interests were not fully aligned with the Sinklers' interests. As the court noted, it was to the Sinklers' benefit—and to EMC's detriment—to assign a larger portion of the total settlement to Nicole's recovery on the loss of consortium claim because Nicole's recovery was not subject to the statutory distribution formula. The court further found that the Harmeyer firm had a "duty to protect EMC's interests." Again, these findings do not convince us that the court erroneously exercised its discretion by concluding that the Harmeyer firm's work did not have a "significant impact" on EMC's recovery, in light of all of the other factors discussed above. Furthermore, it is undisputed that during the mediation, the Sinklers simply accepted attorney Harmeyer's proposed resolution of Nicole's loss of consortium claim without dispute. The record therefore fails to support an argument that the Harmeyer firm performed any significant work toward resolving the parties' conflict as to the loss of consortium claim.

¶39    Finally, when assessing the reasonableness of the Harmeyer firm's fee agreement, the circuit court properly considered the "risks attendant to [the Harmeyer firm's] representation of EMC in this action." *See Maynard Steel*, 307 Wis. 2d 653, ¶20. The court reasoned that the "risks attendant to a worker's compensation insurer's counsel joining an action filed by the injured employee's counsel are significantly lower than those attendant to the injured employee's counsel in investigating and instigating the entire action." In other words, the

court explained that because the statutory distribution formula mandates that an insurer be reimbursed for benefits paid to an injured employee, EMC's recovery

> would have occurred regardless of whether EMC hired its own counsel. Accordingly, when the Harmeyer firm appeared in this action, it received the benefit of the Habush firm's preparation of the claim, without having to assume the risk of absorbing the expense of such preparation if the claim were not ultimately successful. The Harmeyer firm therefore only risked receiving no compensation for work completed from the date of its retainer in March 2017 through the case's conclusion; the Habush firm, in contrast, risked receiving no compensation for two years of preparation work as well as all work completed after filing the action.

¶40 Based on all of the factors discussed above, the circuit court determined that the Harmeyer firm's contingency fee agreement was unreasonable under the circumstances. In so doing, the court employed a logical rationale based on the facts of record and the appropriate legal principles. As such, the court did not erroneously exercise its discretion. *See Anderson*, 281 Wis. 2d 66, ¶19.

¶41 Having concluded that the Harmeyer firm's fee agreement was unreasonable, the circuit court determined the Harmeyer firm was not entitled to recover any attorney fees under that agreement. The court then considered whether it could determine the reasonable value of the Harmeyer firm's attorney fees by using either a lodestar or a quantum meruit analysis. Under a lodestar analysis, the court begins by multiplying a reasonable number of hours expended by a reasonable hourly rate, and it may then make adjustments to the resulting total based on the factors set forth in SCR 20:1.5(a). *Anderson*, 281 Wis. 2d 66, ¶39. A quantum meruit recovery, in turn, is "based upon an implied contract to pay reasonable compensation for services rendered" and is calculated by multiplying the actual number of hours worked by a reasonable hourly rate. *Vande Corput*, 384 Wis. 2d 252, ¶¶26-27 (citation omitted).

¶42    In *Vande Corput*, we concluded that in the absence of an enforceable fee agreement, it would "not be inappropriate" for the circuit court to use a quantum meruit analysis to determine the reasonable value of the services performed by a worker's compensation insurer's attorney.  *Id.*, ¶27.  In this case, however, the circuit court determined it could not employ either a quantum meruit or a lodestar analysis because the Harmeyer firm had not presented any evidence regarding:  (1) the actual number of hours it had expended in connection with this case; (2) the number of hours reasonably expended by worker's compensation insurer's attorneys in similar cases; or (3) a reasonable hourly rate for the Harmeyer firm's services.  On appeal, the Harmeyer firm does not dispute that it failed to provide such evidence.[15]  Under these circumstances, the court properly determined that it could not calculate the reasonable value of the Harmeyer firm's attorney fees using either a lodestar or a quantum meruit analysis.

¶43    In summary, the circuit court concluded that the Harmeyer firm's fee agreement was unreasonable, and it therefore could not use that agreement to determine the reasonable value of the Harmeyer firm's attorney fees.  The court then concluded that it could not calculate the reasonable value of the Harmeyer firm's fees using either a lodestar or a quantum meruit analysis because the Harmeyer firm had failed to provide the necessary evidence.  Accordingly, the court concluded the "reasonable amount of the Harmeyer firm's fee is zero dollars."  While a determination that the reasonable value of an attorney's fees is

---

[15] Our decision in *Vande Corput* was released on August 30, 2018, after the parties in this case had submitted their briefs to the circuit court regarding the appropriate distribution of the settlement proceeds.  On September 6, 2018, the circuit court issued an order permitting the parties to submit supplemental briefs addressing *Vande Corput*.  EMC failed to do so.

$0 is not a typical result, a court has discretion to make that determination, as long as it provides an adequate explanation for its decision. *See **Kolupar v. Wilde Pontiac Cadillac, Inc.***, 2004 WI 112, ¶55, 275 Wis. 2d 1, 683 N.W.2d 58. In this case, the court provided an extensive explanation for its conclusion regarding the reasonable value of the Harmeyer firm's attorney fees, and on the record before us, we cannot say that the court erroneously exercised its discretion.[16]

### B. Step 2: Reasonableness of the total cost of collection

¶44 The second step of the ***Anderson*** analysis requires a court to "evaluate the total cost of collection and determine whether that sum is reasonable." ***Anderson***, 281 Wis. 2d 66, ¶40. Here, the circuit court determined the total cost of collection by adding the Habush firm's one-third contingency fee and out-of-pocket expenses—$43,132.22—to the reasonable value of the Harmeyer firm's attorney fees—$0. The court concluded the resulting amount—$43,132.22—was reasonable, and there was no reason to reduce that amount.

¶45 The circuit court's decision shows that it properly applied the second step of the ***Anderson*** analysis. EMC argues the court erred because it should have: (1) added the Habush firm's one-third contingency fee to the Harmeyer firm's one-third contingency fee; and (2) determined whether the resulting total

---

[16] EMC also contends on appeal that the circuit court erred by declining to award the Harmeyer firm its out-of-pocket costs. We agree with the Sinklers that EMC forfeited this argument by failing to adequately raise or develop it in the circuit court. *See **State v. Eugene W.***, 2002 WI App 54, ¶13, 251 Wis. 2d 259, 641 N.W.2d 467 (To preserve an issue for appeal, a party must raise it "with sufficient prominence such that the trial court understands that it is called upon to make a ruling."). Moreover, EMC failed to provide a meaningful response to the Sinklers' forfeiture argument, and we therefore deem the point conceded. *See **Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

cost of collection—i.e., two-thirds of the gross recovery on the third-party liability claim—was reasonable. EMC further argues that a total cost of collection equal to two-thirds of the gross recovery is not reasonable, and the court should have therefore reduced the cost of collection to one-third of the gross recovery and, as discussed below, apportioned that amount between the attorneys. This argument, however, is premised on the notion that the court should have concluded the reasonable value of the Harmeyer firm's attorney fees was one-third of the gross recovery. As explained above, the court did not err by instead concluding that the reasonable value of the Harmeyer firm's attorney fees was $0.

### C. Step 3: Division of the cost of collection

¶46 Finally, the third step of the *Anderson* analysis requires a court to "direct, unless otherwise agreed, how the attorneys' fees are to be divided between the attorneys." *Id.*, ¶42. Having concluded that the reasonable value of the Harmeyer firm's attorney fees was $0, the circuit court determined it was appropriate to distribute the entirety of the reasonable cost of collection to the Habush firm. Under the circumstances, that determination was not an erroneous exercise of discretion. To the contrary, given the court's conclusion regarding the reasonable value of the Harmeyer firm's attorney fees, it would have been patently illogical for the court to award any portion of the reasonable cost of collection to the Harmeyer firm.

## II. EMC's proposed per se rule

¶47 In the final section of its brief-in-chief, EMC proposes that this court adopt a per se rule in third-party liability actions that when both the employee and the worker's compensation insurer retain attorneys on a contingency fee basis, "the cost of collection should be divided in proportion to the clients' recoveries;

i.e., pro rata." We decline EMC's invitation to adopt such a per se rule, for two reasons.

¶48 First, adopting EMC's proposed rule would be contrary to WIS. STAT. § 102.29 and *Anderson*, both of which grant circuit courts wide discretion to divide the reasonable cost of collection. Section 102.29(1)(c) provides—without limitation—that unless otherwise agreed upon, the cost of collection "shall be … divided between the attorneys … as directed by the court." *Anderson*, in turn, states that a circuit court "must direct, unless otherwise agreed, how the attorneys' fees are to be divided between the attorneys." *Anderson*, 281 Wis. 2d 66, ¶42. We decline to go beyond the plain language of the statute and our supreme court's clear holding in *Anderson* in order to impose a per se rule that would limit circuit courts' wide discretion in dividing the reasonable cost of collection. *See State v. Marshland Acres, Inc.*, 2013 WI App 72, ¶20, 348 Wis. 2d 29, 832 N.W.2d 157 ("We may not substitute our judgment for that of the legislature, and we may not rewrite the statutes."); *see also State v. Lasky*, 2002 WI App 126, ¶32, 254 Wis. 2d 789, 646 N.W.2d 53 ("[T]he court of appeals is bound by prior decisions of the Wisconsin Supreme Court.").

¶49 Second, we agree with the Sinklers that requiring a pro rata distribution of the cost of collection in all third-party liability cases would be unreasonable because, in many such cases, the amounts recovered by the employee and the worker's compensation insurer bear no relationship to the amount of work performed by their respective attorneys. This result occurs because, as explained above, the division of the recovery in a third-party liability action is dictated by statute. Specifically, after the reasonable cost of collection is deducted from the gross recovery, the employee is entitled to one-third of the net recovery, the worker's compensation insurer is reimbursed for any benefits it has

26

paid or will be obligated to pay in the future, and the employee is then entitled any remaining funds. WIS. STAT. § 102.29(1)(b).

¶50 Consequently, in a case in which the worker's compensation insurer has paid a large amount of benefits relative to the total amount of the gross recovery, the insurer will necessarily receive a greater portion of the gross recovery than the employee. That result will occur regardless of the amount of work performed by the insurer's and the employee's respective attorneys. In such circumstances, it would be illogical to require a pro rata distribution of the cost of collection, particularly if the insurer's attorney performed little or no work in the case. Furthermore, requiring a pro rata distribution under those circumstances would deter attorneys from representing employees in third-party liability actions because they would know that regardless of how much work they performed on an employee's behalf, their fee would be limited by the statutory distribution formula. For this reason—and based on the plain language of WIS. STAT. § 102.29(1)(c) and our supreme court's decision in *Anderson*—we decline EMC's invitation to adopt a per se rule requiring the pro rata distribution of the reasonable cost of collection.

*By the Court.*—Order affirmed.